971 P.2d 500 (1999)
137 Wash.2d 319
Shannon SOPRONI, individually, and Bruce A. Wolf, as guardian ad litem for the minor child Daniel Soproni, Petitioners,
v.
POLYGON APARTMENT PARTNERS, a limited partnership; Polygon Shelter, Inc.; Polygon Management, Inc.; and Polygon Northwest, a general partnership doing business as Regatta Townhomes; Milbrandt Architects, a Washington corporation, Defendants,
and Alpine Windows, a foreign corporation, Respondent.
No. 65919-2.
Supreme Court of Washington, En Banc.
Argued June 23, 1998.
Decided February 11, 1999.
*501 Stritmatter, Kessler, Whelan & Whithey, Garth L. Jones, Hoguiam, Paul Whelan, Seattle, for petitioners.
*502 Perry, Hiscock, Pierson, Kingman & Peabody, Max N. Peabody, Seattle, for respondent.
ALEXANDER, J.
The broad issue presented by this appeal is whether the Court of Appeals correctly affirmed the trial court's conclusion that no material factual issue precluded entry of a summary judgment in favor of Alpine Windows in a suit brought against Alpine for negligent design of a window and for failing to provide warnings of the danger presented by the window. We conclude that the trial court correctly granted a summary judgment foreclosing the plaintiffs' claim for a failure to warn but erred in concluding that the window, as designed, was not unreasonably dangerous. We, therefore, reverse the decision of the Court of Appeals in part.
The suit against Alpine had its genesis in 1993, when 20-month-old Daniel Soproni fell from a second story window of an apartment complex onto a concrete patio. Just prior to the fall, Daniel had been playing on a bed in the bedroom in an apartment belonging to his mother's boyfriend. During his play Daniel would open and shut a window, which was accessible from the bed. This activity attracted the attention of the child's mother and her boyfriend and caused them on more than one occasion to close the window and warn Daniel to stay away from it. Unfortunately, the child climbed back onto the window ledge where he again opened the window. Daniel's mother saw Daniel do this and stood up with the intention of retrieving him. Before she was able to do so, however, the child leaned back against the window screen. The screen dislodged and Daniel fell onto the patio below. As a result of the fall, Daniel sustained head injuries resulting in long-term neurological deficits.
The window through which the child fell was marketed under the name "Alpine 220," and was manufactured by Alpine Windows. This window was sold by Alpine, along with others, to Polygon Apartment Partners and was installed at an apartment complex owned by Polygon, which was known as "Campus Grove." According to the record, Alpine had sold windows to Polygon for several other apartment complexes that were owned by Polygon.
The window was in a "pop-out configuration." (See diagram.) This resulted in there being a 16½-half inch interior window ledge. The window, which was 34 inches above the floor, slid open horizontally from left to right. It was secured by a "detent mechanism" or "drop bolt" which was designed to drop vertically by gravity into a slot in the window track when the window was closed or at a three-inch opening. Clerk's Papers (CP) at 264. The window could be opened with minimal effort merely by lifting the detent and applying horizontal pressure. The window did not have a locking device for the detent. The screen, which was not manufactured by Alpine but was sold to Polygon as a unit, was held in place by plastic clips. The Alpine 220 was designed to meet or exceed standards set forth in the Uniform Building Code, the National Fire Protection Association Codes, and various building association codes. These standards provide that the window should be able to be opened from the inside without the use of separate tools in order to allow egress in the case of fire.
Daniel's mother and a guardian ad litem for the child, Bruce A. Wolf, sued Alpine, Polygon, and the architect who designed the Campus Grove apartment complex. The defendants all moved for summary judgment. In opposition to these motions, the plaintiffs filed affidavits from an architect, a human factors engineer, and the managing agent of Polygon. *503 The architect and human factors engineer both said that the detent mechanism could be easily manipulated by an infant and that the window was not safe without a device to deter or prevent a small child from opening it. Both experts also indicated that the safety hazard presented by this window could have easily been designed out of it without compromising compliance with applicable codes and standards. The architect opined that feasibly safe alternatives would include a "casement window which is opened by a hand crank, a keyless locking barrier, a thumb screw locking detent and/or a double hung window which only opened from the top down." CP at 265-66. He indicated, in addition, that "[a] well-designed detent can be child-proofed through use of a simple thumb screw device." CP at 264. These alternatives, he indicated, would have been safer and would "probably have prevented this accident." CP at 266. The human factors engineer indicated that the "window should have been able to be secured with a childproof barrier or lockout to prevent opening more than 4.5 inches." CP at 225.
The apartment complex managing agent discussed two alternative window designs. One included a spring-loaded clip that had to be squeezed before the window could be opened and the other had a furled knob that could be hand tightened to prevent opening. He indicated that the developer would have bought a window with a safer design if it had been offered at the same price. Alpine acknowledged that it makes different types of windows.
The trial court granted summary judgment to the defendants on all claims. The plaintiffs *504 appealed only the summary judgment in favor of Alpine. The Court of Appeals affirmed, concluding that Daniel's mother and the guardian ad litem could not establish that the window was not reasonably safe in design or that the damage was caused by Alpine's failure to include warnings. The plaintiffs sought review of that decision and we granted it.
"When reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court." Barr v. Day, 124 Wash.2d 318, 324, 879 P.2d 912 (1994). It must consider the facts and all reasonable inference from those facts in the light most favorable to the nonmoving party. Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992). The appellate court must reverse summary judgment if the evidence could lead reasonable persons to reach more than one conclusion. On the other hand, it must affirm if there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law. CR 56(c).
In a product liability action, the plaintiff must prove that his or her injuries were proximately caused[1] by a product that is "not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). The plaintiffs contend that there are material factual issues under both of their theories, failure to adequately warn and defective design, that preclude summary judgment. We will discuss each theory.

A. Failure to Adequately Warn
A plaintiff establishes that a product is not reasonably safe by showing that "at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which ... would have been adequate." RCW 7.72.030(1)(b). A plaintiff must show that a product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer" based on the failure to warn as an alternative. RCW 7.72.030(3).
Even assuming that no warnings were provided by Alpine, or that the warnings it gave were inadequate, we are satisfied that the Court of Appeals correctly upheld the trial court's determination that Alpine was without liability for its failure to adequately warn. We reach this conclusion because the record established that the lack of warnings did not contribute to the accident in any way. It shows, rather, that Daniel's mother was aware that the child had easily opened the window just prior to the incident that caused the injury and that she was aware that this presented a danger. In short, there are no facts that contradict the trial court's holding that the manufacturer's failure to give adequate warnings was not a proximate cause of the child's injury. Summary judgment in favor of Alpine on that issue was proper and the Court of Appeals, therefore, did not err in affirming the trial court's ruling in that regard.

B. Design Defect
Washington's product liability statute provides that "[a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed." RCW 7.72.030(1). In Falk v. Keene Corp., 113 Wash.2d 645, 653, 782 P.2d 974 (1989), this court held that strict liability is the applicable standard for a design defect product liability claim maintained under RCW 7.72.030(2). We also determined that a plaintiff who seeks to establish liability on the part of a manufacturer under RCW 7.72.030 may do so in two distinct ways. See Falk, 113 Wash.2d at 654. 782 P.2d 974. On *505 the one hand, a plaintiff may attempt to establish liability by showing that, at time of manufacture, the likelihood that the product would cause the plaintiff's harm or similar harms, and the seriousness of those harms, outweighed the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness. See Falk, 113 Wash.2d at 654, 782 P.2d 974; RCW 7.72.030(1)(a). This is the so-called "risk utility test." Alternatively, a plaintiff may employ the "consumer expectations" test, which requires the plaintiff to show that the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer." Falk, 113 Wash.2d at 654, 782 P.2d 974; RCW 7.72.030(3).[2]
Under the latter test, expectations are judged against the reasonable expectations of the ordinary consumer. This court has suggested that "it may be unreasonable for a consumer to expect product design to depart from legislative or administrative regulatory standards, even if to do so would result in a safer product." Falk, 113 Wash.2d at 655, 782 P.2d 974.[3]
Here, the Court of Appeals held that the affidavit evidence presented by the plaintiffs could not establish that the window was not reasonably safe. It noted in this regard that the window complied with all codes and standards applicable to its design, manufacture, and use and that in this instance a reasonable consumer could expect no more. It also emphasized that product safety must be considered in light of the product's ordinary use, and reasoned that because a "window is for light, air, and egress in case of fire," establishing that an alternative window design would deter a 20-month-old child from opening a window could not establish that the design of the window was unsafe. Soproni v. Polygon Apartment Partners, 88 Wash.App. 416, 421, 941 P.2d 707 (1997), review granted, 134 Wash.2d 1019, 958 P.2d 318 (1998).
In our view, the Court of Appeals placed too much emphasis on Alpine's compliance with codes and standards. Although, as we have noted above, we indicated in Falk that conformity with codes may satisfy consumer expectations, evidence of compliance with codes should not foreclose the plaintiffs' claims. Rather, evidence of whether or not a product was in compliance with legislative or *506 administrative regulatory standards is merely relevant evidence that may be considered by the trier of fact.[4] RCW 7.72.050(1). Fundamentally, it is for the trier of fact to determine if the product was unsafe to an extent beyond that which would be expected by an ordinary consumer. RCW 7.72.030(3). In making that determination it may consider code compliance as well as the evidence of the plaintiffs' experts. Although the Court of Appeals discounted the opinions of plaintiffs' experts as speculative and conjectural, when their submissions are viewed in the light most favorable to the plaintiffs they establish that feasible alternative designs were available which would have prevented the accident here without violating applicable codes. Indeed, this court has considered affidavits such as these in concluding that a material factual issue was present in product liability cases. See Lamon v. McDonnell Douglas Corp., 91 Wash.2d 345, 588 P.2d 1346 (1979).[5]
The dissent suggests that the majority erroneously relies upon Lamon because:
In Lamon, the expert opinion was relevant because it addressed what created the dangerous condition in that case.... Here, expert opinion regarding alternative safer designs is irrelevant because it addresses the wrong issue. What created the dangerous condition here was not Alpine's decisions regarding the design of its window, which met all code requirements, but the developer's decision to use such window, which met code requirements but had no childproof features.
See Concurring/Dissenting op. at 509 n. 4. The dissent goes on to indicate that the opinions of the plaintiffs' experts regarding the design of the window are irrelevant because the window design met all code requirements and, thus, could not have created the dangerous condition that resulted in the injury to Daniel Soproni. We disagree. As previously discussed, compliance with code requirements does not mandate a finding that a product is reasonably safe as designed. As a result, a factual question exists as to whether the design of the window created an unreasonably dangerous condition. The opinions of the plaintiff's experts are relevant on this question. See ER 401. Accordingly, our reference to Lamon is appropriate.
We are also concerned that the Court of Appeals did not engage in any overt balancing of the risk of Alpine's product against its utility. It simply concluded, in essence, that a product is not unsafe merely because safer designed exist for a given application, and it did so without discussing design utility beyond reference to fire and building codes. Although codes and standards implicitly reflect a consideration of the balance between the likelihood and seriousness of harm on the one hand, and the impact that an alternative design would have on a product's usefulness on the other, the fact that there is compliance with codes does not, as we have stated, trump the declarations of expert witnesses.[6] These declarations, at the *507 very least, create an issue of fact on the point.
Finally, we note that in upholding the trial court, the Court of Appeals emphasized that Daniel's injuries did not result from an intended or foreseeable use of the window. It also cited to a case in which a plaintiff alleged negligent road maintenance, Ruff v. County of King, 125 Wash.2d 697, 707, 887 P.2d 886 (1995), for the proposition that there is no duty to make a safe product safer. This discussion is not appropriate to a product liability claim because strict liability rather than negligence is the standard for design defect claims.[7]Falk, 113 Wash.2d at 654, 782 P.2d 974.

C. Conclusion
We conclude that although the Court of Appeals correctly affirmed the trial court's summary judgment dismissing the plaintiffs' claim for failure to warn, it erred in affirming the summary judgment insofar as it dismissed plaintiffs' design defect claim. We, therefore, reverse the decision, in part, and remand for trial.
SMITH, JOHNSON, MADSEN and SANDERS, JJ., concur.
TALMADGE, J. (concurring/dissenting by separate opinion).
The majority correctly holds Alpine Windows (Alpine) did not violate a duty to warn Daniel Soproni regarding the use of the window in this case. Pursuant to RCW 7.72.030(1)(b), there is no duty to warn of obvious hazards, such as falling out of a window. Baughn v. Honda Motor Co., 107 Wash.2d 127, 139, 727 P.2d 655 (1986) ("It is established law that a warning need not be given at all in instances where a danger is obvious or known.").
I do, however, respectfully dissent because of the design defect issue. The majority's approach to design defects under Washington's product liability act of 1981 is simply erroneous, creating untold potential liability for manufacturers of products.
This case arrives before us in an unusual procedural posture. It is undisputed the window from which Daniel Soproni fell met all applicable government and industry standards for safety. In and of itself, the product was not a defective product. Moreover, the choice of this particular window was exclusively that of the architect and builder of the apartment project. Alpine had no particular input into the project design and made no specific recommendations on the choice of windows for these apartments. Nevertheless, the plaintiffs did not appeal from the trial court's grant of summary judgment to the parties who decided to use the windowthe architect and the developera judgment exonerating them from all liability for their choice of window, leaving Alpine as the only defendant in the case.
This exoneration of the architect and builder is troublesome precisely because of the facts in the case. Daniel Soproni was 20 months old at the time of the injury. He was jumping up and down on a bed his mother's boyfriend had placed near the window at issue. The architect and builder chose to place this window behind a 16-½ inch recessed ledge. From the bed, Daniel was able to access the window ledge and the window.
There were two adults in the bedroom when Daniel fell. Daniel's mother was seated at a computer desk next to the bed upon which Daniel was playing, and the other *508 adult was seated at the end of the bed watching television. Both had warned him, not once but twice not to play with the window, which was just above the bed. Yet, despite the obvious dangers, and despite their proximity to him, both allowed their attention to wander, and Daniel, for a third time, began playing with the window. This time, he climbed onto the wide window ledge and leaned against the screen, which failed to support his weight. A 20-month-old is not likely to know window screens are flimsy, and must rely on adult caregivers for protection from such things.
A further troubling aspect of this case is that industry and government standards associated with windows suggest a major focus for window design is ease of opening to allow egress from a building. It is an industry and governmental imperative that people should be able to easily open windows to exit buildings, especially during emergencies. This runs directly contrary to the interest argued for by the plaintiffs here, that is, the placement of impediments to deter the opening of windows so children may not fall out of them from high levels.
Finally, the majority again applies the erroneous interpretation of RCW 7.72.030(1)(a) we first articulated in Falk v. Keene Corp., 113 Wash.2d 645, 782 P.2d 974 (1989). In that case, we discarded the specific language of RCW 7.72.030(1) and held strict liability applies to design defect cases notwithstanding the legislative determination negligence must be the analytical approach to design defect. Falk, 113 Wash.2d at 654. 782 P.2d 974. Moreover, in Falk we held the consumer expectations test was a separate means of demonstrating a design defect was present in a product. Id.[1] Thus, we elevated RCW 7.72.030(3), which was an interpretive tool for product liability cases generally, to the level of RCW 7.72.030(1)(a), which establishes the prima facie elements of a design defect case. Our approach in Falk was simply wrong.
The plain language of the statute indicates a design defect case under the 1981 legislation was intended to be analyzed under negligence principles. RCW 7.72.030(1) indicates:
A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed ....
(Emphasis added.) This was the specific intent of the Legislature because, unlike a case of strict liability, a design defect case necessarily involves assessment of the proper conduct of the manufacturer, that is, whether the design rendered the product unreasonably unsafe. See Philip A. Talmadge, Washington's Product Liability Act, 5 U. PUGET SOUND L.REV. 1, 8 (1981) ("[i]n a more substantial departure from existing law, a negligence standard is imposed for those cases involving a defective product design or inadequate warnings.").
Additionally, the Legislature intended the prima facie elements of a design defect case must involve the risk-utility analysis traditionally employed in a negligence setting. RCW 7.72.030(1)(a) defines the prima facie elements of a design defect case:
A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible *509 would have on the usefulness of the product ....
The expectations of the ordinary consumer were to be a factor in the risk-utility analysis. RCW 7.72.030(3) states:
In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.
The Falk court erroneously established two separate means of proving a design defect casethe risk-utility analysis of RCW 7.72.030(1)(a) and the consumer expectations test of RCW 7.72.030(3). The Legislature intended the single standard as set forth in RCW 7.72.030(1)(a) to apply.[2]
Applying the proper standard to the present facts requires us to determine if Alpine was negligent in designing the window at issue in this case. The Court of Appeals concluded a product is not unsafe merely because safer designs may exist for a product. Soproni v. Polygon Apartment Partners, 88 Wash.App. 416, 421-22, 941 P.2d 707 (1997), review granted, 134 Wash.2d 1019, 958 P.2d 318 (1998). The Court of Appeals is correct.[3] The implication of the majority's decision is that even though a product complies in all respects with all government and industry standards, if there is a possible safer design extant, a fact question on design defect liability is invariably present.[4] While *510 most manufacturers can conceivably build a product capable of avoiding practically all risks associated with its use, the decreased utility and excessive cost of such design would make the venture impractical.
In the present caseusing the risk-utility methodology set forth in the statutethe plaintiffs have not met the burden of proof in establishing a prima facie case for design defect. They must show the likelihood the window here would cause Daniel Soproni's harm or similar harms; and the seriousness of those harms outweighed the burden on Alpine to design a product that would have prevented the harm. If the plaintiffs contend an alternative design was appropriate, they must show the alternative design was practical and feasible and would not have had an adverse effect that would outweigh the usefulness of the window. But the essence of the plaintiffs' case is: it is always a terrible tragedy for children to fall from windows, therefore window manufacturers must design safer windows. That is not enough to meet the test set forth in RCW 7.72.030(1)(a) for a prima facie case of design defect.
Furthermore, even under the majority's formulation of RCW 7.72.030, applying alternatively the consumer contemplation test or risk-utility test, summary judgment for Alpine is appropriate. The majority chides the Court of Appeals for failing to engage in any risk-utility balancing upon concluding the window in question is not unsafe merely because safer designs exist for a given application. Majority op. at 506. Here, a Seventh Circuit case is instructive. In Todd v. Societe Bic, S.A., 21 F.3d 1402 (7th Cir.1994), cert. denied, 513 U.S. 947, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994), the Seventh Circuit Court of Appeals, interpreting Illinois law which applied both risk-utility and consumer contemplation tests (cf. RCW 7.72.030(1) and (3)) as the majority would do here, affirmed summary judgment for a manufacturer of disposable cigarette lighters on a product liability claim. The father brought suit against the lighter manufacturer after a four-year-old girl caused the death of his 22-month-old daughter by setting the infant's room on fire with a disposable lighter. Id. at 1404. The parent sued the lighter manufacturer on negligence and strict liability claims alleging the lighter was unreasonably dangerous because it did not include a child-resistant feature. Id. Bic never denied it was possible to manufacture a lighter with a child-resistant feature, but contended the lighter used was not unreasonably dangerous to consumers. The district court determined a cigarette lighter is not unreasonably dangerous and granted Bic's motion for summary judgment, which the circuit court ultimately affirmed.
Applying first the consumer contemplation test, the circuit court noted such test assures products are not considered unreasonably dangerous simply because they have conceivable unsafe uses. Id. at 1407. Holding the proper standard to be the expectation of the ordinary adult consumer, not the expectation of a foreseeable child user of the product, the circuit court found the lighter was not unreasonably dangerous as a matter of law, opining:
Quite obviously, the consumer expects the lighter, when activated, to provide a flame. That is exactly how the lighter in this case performed. But the lighter was used to do more; the small flame it produced was used to ignite some papers, causing a deadly fire. The ordinary consumer expects that if a lighter's flame is *511 put to some other combustible object, a larger fire ensues. This makes a lighter dangerous. But it does not make a lighter unreasonably dangerous under the consumer contemplation test ... "[v]irtually any product is capable of producing injury when put to certain uses or misuses.... Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an unreasonable risk of harm." The fact that a lighter starts a fire is one of its inherent properties. That fact does not breach consumer expectations; really it fulfills them. Therefore, a lighter which does nothing more than provide a small flame is not unreasonably dangerous under the consumer contemplation test.
Id. at 1407 (quoting Hunt v. Blasius, 74 Ill.2d 203, 384 N.E.2d 368, 372, 23 Ill.Dec. 574 (1978)). As with the lighter in Todd, the window in this case performs as the ordinary consumer expectsit readily opens. Because the window does no more than fulfill the expectations of the ordinary consumer it cannot be unreasonably dangerous.
The Todd court also indicates that where a product is not unreasonably dangerous, application of the risk-utility test is inappropriate. The Todd court noted the absurdity of applying the risk-utility test to simple but obviously dangerous products like disposable lighters.[5]
Consider ... the ordinary kitchen knife. Suppose someone cut by such a knife sued its manufacturer for failing to design a permanent retractable sheath for the knife. Should that person be able to avoid summary judgment simply by presenting statistics showing the feasibility of a permanent retractable sheath? The logical answer is no.... "[M]any manufactured products have potential to cause substantial injury and most can be made safer by different design." For certain products, at least, the manufacturer should not be subject to liability just because it failed to choose the safest (and probably more expensive) alternative design.
Id. at 1411 (quoting Scoby v. Vulcan-Hart Corp., 211 Ill.App.3d 106, 569 N.E.2d 1147, 1151, 155 Ill.Dec. 536 (1991)). The Seventh Circuit held the district court was correct in finding the lighter was obviously dangerous but not unreasonably dangerous without reference to the risk-utility test. Id. at 1412. In affirming summary judgment for Bic, the Seventh Circuit concluded:
The district court was correct in its conclusion that, as a matter of law, an ordinary disposable cigarette lighter is not unreasonably dangerous. Because Bic did not produce an unreasonably dangerous product, it was neither strictly liable nor negligent.
Id. at 1413. Likewise, because the window designed and manufactured by Alpine is not unreasonably dangerous, Alpine cannot be liable under either a negligence or strict liability theory.
A recent Delaware case further supports summary judgment in this case. In Brower v. Metal Indus., Inc., 719 A.2d 941 (Del. 1998), an 8-year-old child opened a second floor window through which an 11-month-old infant fell when the window screen gave way under the infant's weight. The Delaware Supreme Court upheld summary judgment for the window and screen manufacturer, holding such manufacturer had no duty as a matter of law to prevent the child's fall through the open window. Id. at 943, 944 and 946. Likewise, as discussed above, summary judgment for Alpine is appropriate here.
The circumstances of this case are indeed tragic. The fall of a child from a window is a dire event which can result in serious injuries to the child. Appropriate attention to this issue from regulatory authorities, *512 builders, window manufacturers, and parents certainly is in order.[6] Moreover, the child and his family are not without recourse in our tort law; the developer and design professionals who built these apartments and chose the window should be subject to suit. But we cannot develop a law of product liability that makes manufacturers who comply with all applicable government and industry standards the insurers of every aspect of safety in the use of their products, or force such manufacturers to design alternative products which would guard against harm from any conceivable risk in the product's use at a cost so great as to be impractical. I would affirm the Court of Appeals.
GUY, C.J., DURHAM, J., and DOLLIVER, J.P.T., concur.
NOTES
[1] While neither party has focused specifically upon causation, one could argue that the Alpine 220 did not present a safety hazard if its use was confined to the ground level floor of a building and that, therefore, the architect's or owner's decision to use that window above the ground floor was a superseding cause of the child's injury. Even if such an argument had been advanced, we believe that there would still be a factual question about whether such a window, even if installed on the ground floor, presents an unreasonable danger to a small child.
[2] RCW 7.72.030(3) provides:

"In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer."
[3] Justice Talmadge indicates in dissent that "the majority again applies the erroneous interpretation of RCW 7.72.030(1)(a) we first articulated in Falk v. Keene Corp., 113 Wash.2d 645, 782 P.2d 974 (1989)," suggesting that the approach we took in Falk was "simply wrong." Concurring/Dissenting op. at 508. In our view, the dissent pays insufficient homage to the principle of stare decisis which declares that once we have "decided an issue of state law, that interpretation is binding until we overrule it." Hamilton v. Department of Labor & Indus., 111 Wash.2d 569, 571, 761 P.2d 618 (1988). Not only did Falk issue in 1989, four years before this case arose, but we relied there on our holding in Seattle-First Nat'l Bank v. Tabert, 86 Wash.2d 145, 149, 542 P.2d 774 (1975), a case in which we held that a manufacturer is strictly liable for manufacturing an unreasonably dangerous and therefore defective product. Although this court decided Tabert prior to the enactment of Washington's product liability statute, Tabert remains "widely recognized as a leading case in setting forth standards for imposing strict liability for a defective product." Baughn v. Honda Motor Co., 107 Wash.2d 127, 133-134, 727 P.2d 655 (1986). In addition, "The Tabert `consumer expectations' test has been consistently applied by Washington courts in determining whether a manufacturer is strictly liable for manufacturing an unreasonably dangerous and therefore defective product." Baughn, 107 Wash.2d at 133, 727 P.2d 655 (emphasis added). The dissent's impeachment of Falk, based only upon citations to two law review articles, does not persuade us to overrule an established line of precedent.

The dissent also overlooks the principle that the Legislature is presumed to be aware of judicial interpretations of its enactments and that its failure to amend a statute following a judicial decision interpreting it indicates legislative acquiescence in that decision. See Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wash.2d 488, 496-97, 825 P.2d 300 (1992); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 789, 719 P.2d 531 (1986). Significantly, the Legislature has not seen fit to amend RCW 7.72.030 since we decided Falk. See Laws of 1988, ch. 94, § 1. The fact that it has not done so reinforces our conclusion that we should not deviate from that decision.
[4] The dissent asserts that applying "the proper standard to the present facts requires us to determine if Alpine was negligent in designing the window at issue in this case." Concurring/Dissenting op. at 509. As we have observed in this opinion, this court has held that strict liability, rather than negligence, is the applicable standard under RCW 7.72.030. See Falk, 113 Wash.2d at 654, 782 P.2d 974. Even assuming, however, that negligence is the appropriate standard, Alpine would not be entitled to summary judgment in its favor on the basis that Alpine was not negligent because its window complied with nongovernmental, legislative, or administrative standards. Compliance with such standards does not preclude a finding of negligence, however, but is rather a factor that may be considered by the trier of fact. See RCW 7.72.050(1); Falk, 113 Wash.2d at 653-54, 782 P.2d 974.
[5] In Lamon, an airline stewardess fell through an escape hatch connecting the galley of a McDonnell Douglas DC-10 to the passenger compartment above it. In an affidavit, an engineer opined that the DC-10 hatch cover, as designed, was not reasonably safe. The engineer went on to describe the hatch cover that was installed in an airplane designed and built by the Boeing Company and observed that the dangerous features of the DC-10 hatch cover were not present in the Boeing airplane. We concluded that the opinion on the ultimate issue and the comparison between two existing hatches created an issue of material fact that precluded summary judgment. Although this case predates the enactment of Washington's product liability statute, we see no reason why this ruling should not have continuing vitality.
[6] In concluding that the window complied with all codes and standards applicable to its design, manufacture, and use and performed as a reasonable consumer would expect it to perform, the Court of Appeals indicated that the ordinary use of a window was for "light, air, and egress in case of fire." Soproni, 88 Wash.App. at 421, 941 P.2d 707. This strikes us as a rather limited view of a window's utility. A window also serves as a barrier to intruders, insects, heat and cold, and, in addition, can be expected to serve to keep people, particularly children, within a building.
[7] The Court of Appeals relied in part on a Minnesota case with somewhat similar facts, Drager v. Aluminum Indus. Corp., 495 N.W.2d 879, 883, review denied (Minn.Ct.App. 1993). In Drager, the court upheld summary judgment in favor of a screen manufacturer, holding that screens are intended to keep insects out of buildings, and that keeping children from falling from a window was neither an intended nor a foreseeable use as a matter of law. In Minnesota, however, a design defect is proved based on a standard of reasonable care. See Drager, 495 N.W.2d at 882. Moreover, as we have observed, Alpine supplied the entire windows and not merely the clip-on screens.
[1] See Falk, 113 Wash.2d at 654, 782 P.2d 974, stating:

Following RCW 7.72, a plaintiff seeking to establish manufacturer liability for defective product design will establish liability by proving that, at the time of manufacture, the likelihood that the product would cause plaintiff's harm or similar harms, and the seriousness of those harms, outweighs the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative design would have on the product's usefulness. RCW 7.72.030(1)(a). If the plaintiff fails to establish this, the plaintiff may nevertheless establish manufacturer liability by showing the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. RCW 7.72.030(3). If the product design results in a product which does not satisfy this consumer expectations standard, then the product is not reasonably safe.
(Emphasis added.)
[2] See Philip A. Talmadge, Product Liability Act of 1981: Ten Years Later, 27 GONZ. L.REV. 153, 159 (1991-92).

The Washington Supreme Court has substantially departed from the intention of the legislature in developing the standard for design defect cases. The state legislature did not intend for a strict liability standard to apply to design defect cases. The legislature was quite explicit in RCW 7.72.030(1)(a) in adopting a negligence-based standard for liability. The legislature wanted a weighing of the utility of product designs against the harm experienced by a plaintiff. A strict liability standard in this context could substantially discourage innovation in product design. Similarly, the legislature did not intend to establish a separate basis for liability in the consumer expectations test. This test was to be part of the balancing of interests involved in RCW 7.72.030. (Footnote omitted)
[3] As discussed above, the Legislature intended negligence rather than strict liability to be the appropriate test for design defects under RCW 7.72.030(1). Thus, contrary to the majority's assertion at pages 506-507, the Court of Appeals does not err in relying on cases such as: Ruff v. County, of King, 125 Wash.2d 697, 707, 887 P.2d 886 (1995) (no duty to make a safe roador productsafer), and Drager by Gutztnan v. Aluminum Indus. Corp., 495 N.W.2d 879, 884 (Minn. Ct.App. 1993), review denied (Apr. 20, 1993) (upholding summary judgment for a window screen manufacturer under similar facts as present here, applying a reasonable care standard, and holding failure of window screen to restrict child's fall from window does not render window screen unreasonably dangerous for purposes of manufacturer liability for defective design).
[4] In holding summary judgment inappropriate here, the majority relies on Lamon v. McDonnell Douglas Corp., 91 Wash.2d 345, 588 P.2d 1346 (1979). Therein, an engineer's affidavit compared escape hatch covers in DC-10 and Boeing 747 airplanes and opined the DC-10 hatch cover, lacking the safety features of its Boeing counterpart which facilitated hatch closure, created an unreasonably dangerous condition in light of the working procedures of the airplane's crew (i.e., flight attendants' duties often required them to walk backward down the aisle over the hatch). We held such affidavit created a genuine issue as to the material fact of whether the hatch cover, as designed and installed, was or was not reasonably safe. Id. at 351, 588 P.2d 1346. The expert's affidavit in Lamon was relevant because the manufacturer there (McDonnell Douglas) had full control over all matters concerning the relative safety of the escape hatch. McDonnell not only designed and installed the hatch cover, but also decided where to place the hatch in the airplane it built. The affidavit was relevant as to McDonnell's role as the sole decision maker in designing and installing the hatch and hatch cover which created the dangerous condition. As only the plane's builder participated in decisions which could potentially create a dangerous condition, the expert's affidavit comparing how a different manufacturer had handled the particular situation was an appropriate inquiry. Thus, summary judgment in that case was not appropriate given the relevant fact question raised by the expert's opinion.

Such is not the case here, however. Here, the expert opinions offered by appellants reflect only that safer window designs exist, not that the window in question is inherently unsafe. The appropriate inquiry in Lamon was "did the device as designed and installed (that is, as used) create a dangerous condition," while the appropriate inquiry here is "did the device itself create the dangerous condition." This distinction acknowledges that unlike in Lamon, the manufacturer here played no role in where and how the device it manufactured was to be used. In Lamon, the expert opinion was relevant because it addressed what created the dangerous condition in that case, the manufacturer's decisions regarding the design and use of its product/device. Here, expert opinion regarding alternative safer designs is irrelevant because it addresses the wrong issue. What created the dangerous condition here was not Alpine's decisions regarding the design of its window, which met all code requirements, but the developer's decision to use such window, which met code requirements but had no childproof features, in an upper floor window seat.
Restated another way, where Alpine had no input on the installation or use of its window, the fact safer window designs exist for use in upper floor window seat configurations is irrelevant as to Alpine's liability. Soproni even admits Alpine made "safer" windows, but also notes the builder and designer made the choice to use this particular Alpine window based on cost considerations. Pet. for Review at 6-7. Therefore, the expert opinion on safer window design in this case does not address a material fact as to Alpine's liability and thus the presence of such opinion should not preclude summary judgment.
[5] Like the lighter, which by producing a small flame only becomes dangerous when brought in contact with combustibles, the window which readily opens only becomes dangerous when installed on the upper floors of buildings and access to it is facilitated by the careless placing of tables, chairs, beds, etc. under it. Only then does a window which functions as intended become potentially dangerous to children.
[6] See Bryant Westchester Realty Corp. v. Board of Health, 91 Misc.2d 56, 397 N.Y.S.2d 322 (N.Y.Sup.1977) (denying landlord's motion to enjoin enforcement of New York City Health Code section requiring installation of window guards in apartment and hallway windows of buildings where children under the age of 10 reside, noting the provision was passed after public hearings and study; and further holding such enactment, for the purpose of preventing children from falling from windows, was a proper exercise of the state's police power).