[Nos. 73794-1; 74092-5.   En Banc.]
Argued February 24, 2004.     Decided November 18, 2004.

*In the Matter of the Personal Restraint of* CHRISTOPHER M. LACHAPELLE, *Petitioner.*

*In the Matter of the Personal Restraint of* CHRISTOPHER R. WESTFALL, *Petitioner.*

MADSEN, IRELAND, BRIDGE, and FAIRHURST, JJ., dissent by separate opinion.

*Christopher M. LaChapelle*, pro se.

*Christopher R. Westfall*, pro se.

*Suzanne L. Elliott*, for petitioners.

*Gerald A. Horne*, *Prosecuting Attorney for Pierce County*, and *Kathleen Proctor* and *John M. Sheeran*, *Deputies*, and *Jeremy R. Randolph*, *Prosecuting Attorney for Lewis County*, for respondents.

¶1 CHAMBERS, J. — We are asked again to examine the 1997, 2000, and 2002 amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. We adhere to our decisions in *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999), *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245 (2001),

and *State v. Varga*, 151 Wn.2d 179, 86 P.3d 139 (2004), and hold that under the 2000 amendment to the SRA, the trial court should not have counted previously "washed out" convictions in calculating an offender score for the purpose of sentencing. We therefore reverse and remand for the petitioners to be resentenced.

¶2 Christopher M. LaChapelle was born in 1981 and turned 15 on April 25, 1996. In March 1995, when he was 13, LaChapelle committed third degree assault. Then in November 1996, when he was 15, LaChapelle committed burglary.[1]

¶3 Christopher R. Westfall was born in 1982 and turned 15 on September 10, 1997. In March 1997, when he was 14, Westfall committed second degree possession of stolen property.[2] Then in August 1998, when he was 15, Westfall committed forgery.[3]

¶4 Prior to the 1997 SRA amendment, juvenile offenses committed before the age of 15 were not included as prior offenses in the calculation of offender scores for current offenses. Former RCW 9.94A.030(12)(b)(ii) (1996); *Smith*, 144 Wn.2d at 671. Therefore, the offense committed by LaChapelle when he was 13 and the offense committed by Westfall when he was 14 were not included in the definition of "criminal history" before the 1997 amendment to the SRA. Before the 1997 amendment to the SRA, offenses committed before age 15 were often described as washed out because they were not included in defendants' criminal histories nor used to calculate their offender scores. However, technically, the offenses never existed as

---

[1] LaChapelle does not challenge the inclusion of this juvenile offense in the calculation of his offender score for each of his current offenses because it occurred after he turned 15, and the 1997 SRA amendment became effective before he turned 23. *See State v. Perry*, 110 Wn. App. 554, 42 P.3d 436 (2002).

[2] This offense was committed before the 1997 SRA amendment became effective on July 1, 1997. Laws of 1997, ch. 338, § 75.

[3] Westfall does not challenge the inclusion of this juvenile offense in the calculation of his offender score for each of his current offenses because it occurred after he turned 15, and the 1997 SRA amendment became effective before he turned 23. *See Perry*, 110 Wn. App. 554.

criminal history in the first place, and therefore nothing existed to be washed out. The 1997 SRA amendment changed the definition of "criminal history" so that juvenile offenses committed both before and after the age of 15 no longer washed out and are to be included as prior offenses in the calculation of offender scores for current offenses. LAWS OF 1997, ch. 338, § 2; former RCW 9.94A.030(12)(b) (1997). Criminal history under the 1997 SRA amendment was defined as "the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(12).

¶5 After the 1997 amendment to the SRA, LaChapelle was convicted of first degree robbery and first degree kidnapping with a firearm enhancement. These offenses occurred on January 18, 1998. At sentencing, the trial court calculated his offender score by including his March 1995 offense even though he was under 15 at the time and the crime was committed before the 1997 SRA amendment. Similarly, after the 1997 amendment, Westfall was convicted of first degree conspiracy to commit robbery, robbery in the first degree, second degree possession of a firearm, and possession of a stolen firearm. These offenses occurred on November 10, 1998. At sentencing, the trial court calculated his offender score for each offense by including his March 1997 offense even though it was committed before the 1997 SRA amendment took effect. Both young men filed personal restraint petitions; we granted review and consolidated both petitions.

## STANDARD OF REVIEW

¶6 Our review is de novo because statutory interpretation is a question of law. *State v. Beaver*, 148 Wn.2d 338, 344, 60 P.3d 586 (2002). However, under the doctrine of stare decisis, "once we have 'decided an issue of state law, that interpretation is binding until we overrule it.'" *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 327 n.3, 971 P.2d 500 (1999) (quoting *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988)).

## ANALYSIS

### TIME BAR

¶7 Generally, collateral attacks on judgments and sentences are prohibited if not brought within one year of becoming final. RCW 10.73.090(1). However, the one-year statutory time bar is not applicable to judgments and sentences that appear facially invalid. *Id.* A sentence, which was improperly calculated using previously washed out juvenile offenses, is invalid on its face. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 865-67, 50 P.3d 618 (2002). Because LaChapelle and Westfall have met their prima facie burden of demonstrating that their sentences were invalid on their face, their petitions are not time barred. *Id.*

### SRA HISTORY

¶8 The SRA became effective in 1984. It attempted to create more certainty and uniformity in sentencing, to make sentencing more dependent upon the crime committed and criminal history of the offender, and to reduce the discretion of trial judges. David Boerner & Roxanne Lieb, *Sentencing Reform in the Other Washington*, 28 CRIME & JUST. 71, 84-87 (2001). The SRA utilizes objective criteria to establish sentencing ranges. The sentencing judge must calculate, in a mathematical fashion, an offender score for each offense. This score determines the sentencing range applicable to the offender. The calculation may require not only the analysis of statutes of other states but also analysis and coordination of numerous amendments to the SRA.

¶9 The difference of a single point may add or subtract three years to an offender's sentence. Therefore, the accurate interpretation and application of the SRA is of great importance to both the State and the offender. Because each offense must be analyzed under the law in effect at the time the offense was committed, each time the SRA is amended it adds an additional level of complexity to the

task of the courts, as well as the prosecution, the defense, and the Department of Corrections. *State v. Jones*, 118 Wn. App. 199, 76 P.3d 258 (2003), is illustrative. In *Jones*, the trial court was required to analyze and attempt to harmonize three separate amendments to the SRA. As Judge Dean Morgan observed in *Jones*, "[i]t is extremely difficult to identify what statute applies to a given crime, much less to coordinate that statute with others that may be related." *Id*. at 211-12. Since the SRA was adopted in 1981, it has been amended by 181 session laws.[4] The complexity and difficulty applying the SRA is exacerbated by each successive change to the SRA. Interpreting and harmonizing amendments to the SRA has increasingly occupied the time of both trial and appellate courts. In all likelihood this trend will continue. In the 58th legislature alone, 97 bills were introduced, which proposed a total of 262 changes to the SRA. Notwithstanding constant modifications to the law, courts strive to make the law clear, understandable, and predictable.

RETROSPECTIVITY AND PROSPECTIVITY OF SENTENCING AMENDMENTS

¶10 Our holding is controlled by three of our prior decisions dealing with retrospectivity and prospectivity of sentencing amendments: *Cruz*, *Smith*, and *Varga*. We recently analyzed *Cruz* and *Smith* in *Varga*. All these cases required us to apply successive amendments to the SRA, which changed the basis for offender score calculations. Offender scores, of course, determine presumptive sentencing ranges. As we noted in *Cruz*, before the 1990 amend-

---

[4] *Jones*, 118 Wn. App. at 211 n.32 (listing 175 session laws that amended the SRA; however, absent from this list was LAWS OF 2003, ch. 53). The 58th legislature also amended the SRA with five session laws in 2004. LAWS OF 2004, ch. 38; LAWS OF 2004, ch. 94; LAWS OF 2004, ch. 121; LAWS OF 2004, ch. 166; LAWS OF 2004, ch. 176. In all, the 58th legislature considered 97 bills that would have amended the SRA. Of those 97 bills considered, 14 were enacted. www.leg.wa.gov/pub/billinfo/2003-04/chapter_to_bill_table.htm (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo1/rcw_sl_selections.cfm?year=03 (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo1/rcw_sl_selections.cfm (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo/rcw_to_bill_table.cfm (last checked May 11, 2004).

ment to the SRA, a defendant who had 10 years in the community without a felony conviction was effectively entitled to have that conviction disappear from the calculation of his offender score. *Cruz*, 139 Wn.2d at 189; former RCW 9.94A.360 (1988 Supp.). Cruz was convicted of rape in 1975 and spent more than 10 years in the community without another felony conviction. *Cruz*, 139 Wn.2d at 188. His conviction had washed out. *Id*. at 189. In 1990, the legislature amended the statute by eliminating sex offenses from the wash out provision. Laws of 1990, ch. 3, § 706. In 1994, Cruz was charged and found guilty of the rape of a child in the first degree. *Cruz*, 139 Wn.2d at 187. His 1975 conviction was included in his offender score. *Id*. at 188. The issue before the court was whether by resurrecting Cruz's 1975 conviction the 1990 amendment to the SRA violated federal and state constitutional protections against ex post facto legislation. However, upon review, we found it unnecessary to reach the constitutional issues because we found no legislative intent to apply the legislation retroactively.

> The presumption against retroactive application of a statute "is an essential thread in the mantle of protection that the law affords the individual citizen. That presumption 'is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" *Lynce v. Mathis*, 519 U.S. 433, 439, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229 (1994)). *See also In re Personal Restraint of Shepard*, 127 Wn.2d 185, 193, 898 P.2d 828 (1995) (court presumes newly enacted statutes operate prospectively). The constitutional prohibition against ex post facto legislation is but a further manifestation of the repugnance with which such retroactive legislation is viewed. *See Landgraf*, 511 U.S. at 266.

*Cruz*, 139 Wn.2d at 190-91.

¶11 In *Cruz*, we also observed that assuming constitutional concerns were satisfied, the SRA could be applied retroactively, but only if the legislative intent to do so is clearly found within the statute's language. *Id*. at 191. We

determined that the legislature intended that the 1990 SRA amendments apply prospectively. *Id.* We reasoned that the 1990 amendments would have to be applied retroactively to require Cruz's sentencing court to include his previously washed out 1975 rape conviction when calculating Cruz's offender score because "[t]he 1990 change to the SRA would not serve to change Cruz's existing criminal history (which *did not include* the 1975 rape as it had washed out in 1987) *unless* it was applied retroactively" to revive the previously washed out offense. *Id.* at 193.

¶12 The legislature responded with additional amendments to the SRA. *Smith*, 144 Wn.2d at 672; LAWS OF 2000, ch. 26, § 2. The relevant 2000 SRA amendment stated: "Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." LAWS OF 2000, ch. 26, § 2. In a statutory note, the legislature explained:

> This act is intended to cure any ambiguity that might have led to the Washington supreme court's decision in *State v. Cruz*, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. This act is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.

LAWS OF 2000, ch. 26, § 1.

¶13 In *Smith*, we again addressed the issue of the prospectivity or retroactivity of changes in criminal history. *Smith*, 144 Wn.2d at 672-75. In *Smith*, we examined four consolidated cases, which we described as involving previously washed out criminal history. *Id.* at 668. One of the cases, *Lowe*, involved facts legally indistinguishable from the cases now before us. *Id.* at 669. Our opinion in *Smith* observed that the legislature had expressed discontent with our opinion in *Cruz* and that the 2000 amendments contained no language showing the legislature intended the 1997 amendment to apply retroactively. *Id.* at 672-73;

*accord Varga*, 151 Wn.2d at 184-85. We concluded that the 1997 amendment was neither curative nor remedial and could not be applied retroactively to revive the appellants' previously washed out convictions. *Smith*, 144 Wn.2d at 674.

¶14 Following our opinion in *Smith*, the legislature again responded with another SRA amendment. *Varga*, 151 Wn.2d at 183; LAWS OF 2002, ch. 107, § 1. Criminal history was redefined.[5] Additionally, the amendment provided:

> The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. Accordingly, prior convictions that were not counted in the offender score or included in criminal history under repealed or previous versions of the sentencing reform act shall be included in criminal history and shall count in the offender score if the current version of the sentencing reform act requires including or counting those convictions.

LAWS OF 2002, ch. 107, § 3(18). Lastly, the legislature stated that the 2002 SRA amendment applies "only to current offenses committed on or after the effective date of this act. No offender who committed his or her current offense prior to the effective date of this act may be subject to resentencing as a result of this act." LAWS OF 2002, ch. 107, § 4. The

---

[5] The relevant portion of the amendment is as follows:

(13) "Criminal history" means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere.

(a) The history shall include, where known, for each conviction (i) whether the defendant has been placed on probation and the length and terms thereof; and (ii) whether the defendant has been incarcerated and the length of incarceration.

(b) A conviction may be removed from a defendant's criminal history only if it is vacated pursuant to RCW 9.96.060, 9.94A.640, 9.95.240, or a similar out-of-state statute, or if the conviction has been vacated pursuant to a governor's pardon.

(c) The determination of a defendant's criminal history is distinct from the determination of an offender score. A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentence reform act remains part of the defendant's criminal history.

LAWS OF 2002, ch. 107, § 2(13).

amendments went into effect on June 13, 2002. RCW 9.94A.525, .030.

¶15 In *Varga*, we again agreed to examine the consolidated petitions of eight persons who were sentenced for offenses which occurred after the effective date of the 2002 amendment to the SRA. *Varga*, 151 Wn.2d at 187. Our task was to determine whether, following the 2002 amendment to the SRA, it was proper for the sentencing judges to include convictions which would have washed out based upon prior statutes and court opinions. *Id.* We interpreted the 2002 amendment to the SRA as a clear expression from the legislature within the statute itself to redefine "criminal history" to be applied prospectively rather than retrospectively. *Id.* at 191, 193. In *Varga*, we stated, "[h]ere, the legislature clearly intended that the amendments apply prospectively at sentencing for crimes committed on or after June 13, 2002." *Id.* at 190-91. We further stated:

> These amendments explicitly state that a defendant's criminal history includes "washed out" convictions. LAWS OF 2002, ch. 107, § 2(13). Further, the legislature directed sentencing courts to consider these previously "washed out" convictions when calculating offender scores if the current version of the SRA requires consideration of that type of conviction. LAWS OF 2002, ch. 107, § 3(18).

*Id.* at 191.

¶16 To review, we have applied sentencing statutes prospectively and have thus declined to apply the definition of criminal history to retroactively revive previously washed out convictions. *See Smith*, 144 Wn.2d at 674-75 (holding 1997 SRA amendment does not apply retroactively to revive appellants' previously washed out juvenile adjudications); *see Cruz*, 139 Wn.2d at 193 (holding 1990 SRA amendment does not apply retroactively to revive defendant's 1975 offense that washed out under former version of the SRA); *see In re Pers. Restraint of Williams*, 111 Wn.2d 353, 361, 759 P.2d 436 (1988) (holding 1986 SRA amendment to wash out provision which took effect after defendant's sentencing not applicable); *cf. State v.*

*Dunaway*, 109 Wn.2d 207, 216, 743 P.2d 1237 (1987) (holding 1987 SRA amendments to definition of " '[s]ame criminal conduct' " not applicable to defendants' 1984 and 1986 offenses). In *Varga*, we recognized a clearly stated legislative intent announced in the 2002 SRA amendment. Under the current SRA, no offender has a vested right in the definition of criminal history in effect when a previous crime was committed. The legislature has asserted the power to change the way offender scores are calculated. LAWS OF 2002, ch. 107, § 1. As we stated in *Varga*, "[t]he legislature may prospectively amend the SRA to require that courts include previously 'washed out' convictions when calculating offender scores and has done so by the plain language of the 2002 SRA amendments." *Varga*, 151 Wn.2d at 202. Courts are to apply the definition of criminal history in effect at the time the offense was committed to calculate the sentence for that offense.

¶17 It is important that the law be clear, understandable, and predictable. Accordingly, we follow the doctrine of stare decisis and our analysis of the respective amendments to the SRA in *Cruz*, *Smith*, and *Varga*. The circumstances presented by LaChapelle and Westfall[6] are not precisely the same as those presented in *Cruz*. In *Cruz*, the appellant's 1975 conviction counted as "criminal history" but then washed out because he went 10 years after his release without a conviction. LaChapelle and Westfall's convictions for offenses before their 15th birthdays never counted as criminal history; so they technically never washed out because they never existed as criminal history under the SRA in effect at the time of their offense.

¶18 Analytically, however, we see little difference between offenses that wash out by the passage of time and those that never counted as "criminal history." The circumstances of defendant Michael Lowe in *Smith* are legally

---

[6] The State also contends that Westfall's offender score of three for each current offense was calculated without inclusion of his 1997 offense, which was committed at age 14. However, it was mathematically impossible for the trial court to compute an offender score of three without including one-half point for Westfall's 1997 offense.

indistinguishable from those of LaChapelle and Westfall. Although Lowe's juvenile offenses never counted as part of his criminal history, we treated them as having been "previously washed out because they occurred before he reached age 15." *Smith*, 144 Wn.2d at 669. Whether criminal history is erased by time or simply did not exist because of statute is immaterial to our analysis of retroactive or prospective application. LaChapelle and Westfall committed their offenses before the 2002 amendment to the SRA and therefore are controlled by our decision in *Smith*. Consequently, LaChapelle's and Westfall's juvenile convictions committed before the age of 15 are not to be counted in calculating their offender scores for these offenses.[7]

## CONCLUSION

¶19 In *Cruz* and *Smith*, we concluded that the 1997 and 2000 amendments to the SRA, respectively, did not clearly express an intent to include convictions which had previously been washed out or not counted as criminal history, and we declined to retroactively revive previously washed out offenses or criminal history that never existed. However, in *Varga*, we concluded that the 2002 amendment to the SRA clearly stated legislative intent to define "criminal history" in a new way to be applied prospectively. Under the 2002 amendment, offenders have no vested right in prior wash out provisions. They are subject to the "criminal history" statute in effect at the time of the offense.

---

[7] We respectfully disagree with the dissent's characterization of the governing question before the court. If we were writing on a clean slate, we might be persuaded that the dissent is correct that the 2000 and 2002 legislatures' clearly expressed intent is persuasive evidence of the 1997 legislature's intentions. However, we are not writing on a clean slate; we have already interpreted the 1997 amendment and found that it does not apply under these circumstances. *See Smith*, 144 Wn.2d at 674. The distinction the dissent draws between a washed out conviction and a conviction that simply never existed for purposes of calculating an offender score is not a distinction that makes a difference under *Smith*, as the dissent impliedly acknowledges at pages 17-18. Adopting the dissent's approach would require this court to impliedly overrule *Smith* (and, therefore, the other cases that articulate the same principles, such as *Cruz* and *Varga*). Following the dissent would contribute to the constant tinkering with the SRA. It is better to adhere to stare decisis and provide clarity and predictability to a complex area of our law.

¶20 We hew to our precedents in *Cruz*, *Smith*, and *Varga*. We hold that washed out offenses described in this opinion may not be counted in calculating offender scores for offenses which occurred before the effective date of the 2002 amendment to the SRA. We, therefore, reverse the cases before us and remand for resentencing consistent with this opinion.

ALEXANDER, C.J., and JOHNSON, SANDERS, and OWENS, JJ., concur.

¶21 MADSEN, J. (dissenting) — The majority misapplies recent case law from this court, overlooking important differences between this case and prior "wash out" decisions such as *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999), and *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245 (2001). A careful review of those decisions shows that the majority's reasons for overturning the defendants' (Christopher LaChapelle and Christopher Westfall) sentences are not justified. The majority's result contravenes clear legislative intent and established principles of statutory interpretation. I respectfully dissent.

## ANALYSIS

¶22 Unlike the sentences at issue in *Cruz* and *Smith*, these defendants' current sentences do not depend on resurrecting prior convictions through retroactive application of a legislative amendment. Instead, these defendants' sentences may be upheld under a wholly prospective application of the sentencing law in effect at the time of their present crimes. On this critical point the majority concedes that "technically . . . [these juvenile] offenses never existed as criminal history [under the version of the SRA in effect at the time of their commission] in the first place, and therefore nothing existed to be washed out." Majority at 4-5. As the majority correctly notes, "[t]he 1997 SRA amendment changed the definition of 'criminal history' so that juvenile offenses committed both before and after the age of

15 . . . are to be included as prior offenses in the calculation of offender scores for current offenses." *Id.* at 5 (citing LAWS OF 1997, ch. 338, § 2; former RCW 9.94A.030(12)(b) (1997)). Such undeniably clear legislative intent should not be ignored.

¶23 While the majority sees "little [analytical] difference between offenses that wash out by the passage of time and those that never counted as 'criminal history' [in the first place]," *id.* at 12, the distinction is dispositive. First, this court has never r cognized an absolute vested right in the law remaining static. *See, e.g., State v. Hennings,* 129 Wn.2d 512, 528, 919 P.2d 580 (1996) ("[a] vested right entitled to protection . . .' "must be something more than a *mere expectation* based upon an anticipated continuance of the existing law" ' " (quoting *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.,* 123 Wn.2d 391, 414, 869 P.2d 28 (1994) (quoting *In re Marriage of MacDonald,* 104 Wn.2d 745, 750, 709 P.2d 1196 (1985))))). On this point the majority also concedes, again without recognizing the practical significance of its concession, that courts must "apply the definition of criminal history in effect at the time [an] offense was committed to calculate the sentence for that offense." Majority at 12. The definition provided by the 1997 amendment could not have been clearer with respect to juvenile crimes.

¶24 Second, retroactive application presupposes the existence of a vested right which the defendants' never possessed. We conclusively established in *State v. Varga,* 151 Wn.2d 179, 183-84, 86 P.3d 139 (2004), that " '[w]hen the legislature enacted the sentencing reform act, chapter 9.94A RCW, and *each time the legislature has amended the act,* the legislature intended that an offender's criminal history and offender score be determined using the statutory provisions that were in effect on the day the current offense was committed.' " (emphasis added) (quoting LAWS OF 2002, ch. 107, § 1). As such, any claim of entitlement to exclude juvenile convictions from criminal history required not only the *existence* of prior convictions but also *a vested*

*legal right in their washed out status before the commission of a new offense.* But these defendants had no right to expect that past juvenile offenses, which never washed out, might not someday count toward their criminal history.

¶25 Third, the amendment in question here serves only to enhance the penalty for crimes committed *after its provisions became effective*, and as such may be viewed as entirely prospective in nature. *See, e.g., State v. Blank,* 131 Wn.2d 230, 248, 930 P.2d 1213 (1997) (" 'A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute . . . .' " (alteration in original) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 535, 520 P.2d 162 (1974))); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) ("A statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law.") (citing *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 100, 113 S. Ct. 554, 121 L. Ed. 2d 474 (1992) (Thomas, J., concurring in part, concurring in judgment)).

¶26 Finally, and of critical importance in distinguishing the instant case from both *Cruz* and *Smith,* the law in effect when these defendants committed their most recent crimes unambiguously provided for the inclusion of juvenile offenses in their criminal history. In fact, the legislative intent to include prior juvenile convictions in a defendant's criminal history could not have been clearer when the defendants' present crimes were committed. The 1997 amendment at issue expressly defined criminal history as:

> [T]he list of a defendant's prior convictions *and juvenile adjudications, whether in this state, in federal court, or elsewhere.* The history shall include, where known for each conviction (a) whether the defendant has been placed on probation and the length and terms thereof; and (b) whether the defendant has been incarcerated and the length of the incarceration.

Laws of 1997, ch. 338, § 2(12) (emphasis added). In contrast, the legislative intent to revive previously washed out convictions, such as those at issue in *Cruz* and *Smith,* was not

made sufficiently clear until well after the crimes at issue in those cases were committed.[8] As such, the fundamental concerns underlying our decisions in *Cruz* and *Smith* are simply not present here. In sum, the disputed elements of defendants' criminal history relate to offenses which, unlike the factually distinguishable category of "washed out" offenses considered in *Cruz* and *Smith*, were explicitly and clearly addressed by the legislature in 1997. Consequently, the trial court correctly applied the version of the SRA in effect when these defendants committed their most recent crimes.

¶27 While recognizing that the defendants' past convictions never washed out, the majority nevertheless reaches a conclusion at odds with *Varga* by confusing the defendants' "criminal history" with its own hypothetical considerations of what their offender scores might have been under prior versions of the SRA. To this end, *Varga* plainly established that " '[t]he determination of a defendant's criminal history is distinct from the determination of an offender score. A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentencing reform act remains part of the defendant's criminal history.' " *Varga*, 151 Wn.2d at 184 (emphasis omitted) (quoting LAWS OF 2002, ch. 107, § 2(13)). Moreover, " '[t]he legislature . . . never intended to create in an offender a vested right with respect to whether a prior conviction is excluded when calculating an offender score or with respect to how a prior conviction is counted in the offender score for a current offense.' " *Id.* (quoting LAWS OF 2002, ch. 107, § 1).

¶28 Unfortunately, in following *Cruz*, *Smith* failed to recognize or discuss a crucial distinction between the sentence of one of the defendants in *Smith*, Mr. Lowe, and the

---

[8] As we noted in *State v. Varga*, 151 Wn.2d 179, 192, 86 P.3d 139 (2004) "[i]n both *Cruz* and *Smith*, we reached our decisions by construing the statutory terms of the SRA in effect at th[e] time." In *Cruz*, we found insufficient legislative intent to revive previously washed out convictions, concluding that "Cruz's 'washed out' juvenile sex conviction no longer existed under the definition of criminal history . . . in effect at that time. . . . Relying on *Cruz*, we reached a similar conclusion in *Smith*, holding that the 1997 and 2000 SRA amendments [similarly] failed to evidence sufficient retroactive intent." *Varga*, 151 Wn.2d at 192.

sentences at issue in *Cruz*. Like the defendants here, defendant Lowe challenged inclusion of juvenile convictions. And, like these defendants, defendant Lowe derived no vested right in excluding prior convictions that never "washed out" such as those at issue in *Cruz*. Rather than build on an oversight in *Smith*, this court should recognize that juvenile convictions are addressed by express language in the 1997 amendment and require a different analysis than "washed out" crimes. There has never been any question that the legislature intended the 1997 version of RCW 9.94A.030, and its definition of "criminal history," apply in sentencing a defendant for offenses that were committed when the 1997 statute was in effect and which had not "washed out" under prior law. Our recognition of legislative intent dating back to the enactment of the SRA in 1984 eliminates any need to question when and how the 1997 version of RCW 9.94A.030 should have been applied by the trial court. Overturning these defendants' sentences represents not only an unjustifiable encroachment on the authority of the legislative branch but also blatantly disregards our own recent precedent. The law in effect when the defendants' *juvenile offenses* were committed, absent a legitimate claim of right to a washed out conviction, is entirely irrelevant.

## CONCLUSION

¶29 Our decisions in *Cruz* and *Smith* were based on an apparent absence of legislative intent to revive previously washed out convictions. Unlike the convictions at issue in those cases, the defendants' juvenile convictions never washed out. Moreover, the definition of "criminal history" in effect when these defendants' present crimes were committed unambiguously provided for the inclusion of juvenile convictions. Properly construed, this case is not about revival but instead is about merely applying the sentencing law as the legislature intended it to be applied prospectively. There is simply no "retroactive" effect of the kind that *Cruz*, and ostensibly *Smith*, were trying to avoid. These

defendants' past convictions were properly considered by the trial court in establishing their present criminal history.

IRELAND, BRIDGE, and FAIRHURST, JJ., concur with MADSEN, J.