[No. 74375-4.   En Banc.]
Argued November 19, 2003.     Decided March 18, 2004.

THE STATE OF WASHINGTON, *Respondent*, v. LESLIE VARGA, ET AL., *Appellants*.

THE STATE OF WASHINGTON, *Appellant*, v. WILLIAM DENNIS, *Respondent*.

*Thomas M. Kummerow, Maureen M. Cyr, Sharon J. Blackford, Cheryl D. Aza, Gregory C. Link*, and *Nancy P. Collins* (of *Washington Appellate Project*), for appellants Varga, Cleator, Castle, Rafvino, Tucker, Brealan, and Straub and respondent Dennis.

*James Foy*, pro se.

*Jennifer L. Dobson*, for appellant Foy.

*Janice E. Ellis, Prosecuting Attorney for Snohomish County*, and *Seth A. Fine* and *Charles F. Blackman, Deputies*; and *Norm Maleng, Prosecuting Attorney for King*

*County*, and *Deric Martin* and *James M. Whisman*, *Deputies*, for the State.

BRIDGE, J. — Pursuant to RAP 4.4, this court transferred the above captioned appeals from Division One of the Court of Appeals to address the question whether in light of this court's decisions in *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999) and *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245, 39 P.3d 294 (2001), the 2002 amendments to RCW 9.94A-.525 and RCW 9.94A.030 of the Sentencing Reform Act of 1981 (SRA) may require sentencing courts to include previously "washed out" convictions when determining defendants' criminal histories and offender scores for crimes committed after the amendments' effective date, June 13, 2002. We hold that the 2002 SRA amendments properly and unambiguously require that sentencing courts include defendants' previously "washed out" prior convictions when calculating defendants' offender scores at sentencing for crimes committed on or after the amendments' effective date.

## The 2002 SRA Amendments

During the 2002 regular session, the legislature enacted amendments to the SRA in response to this court's decisions in *Cruz*, 139 Wn.2d at 193 and *Smith*, 144 Wn.2d at 672-74. LAWS OF 2002, ch. 107, § 1. The amendments' "Finding" states:

> The legislature considers the majority opinions in *State v. Cruz*, 139 Wn.2d 186 (1999) and *State v. Smith*, Cause No. 70683-2 (September 6, 2001), to be wrongly decided, since neither properly interpreted legislative intent. When the legislature enacted the sentencing reform act, chapter 9.94A RCW,

and each time the legislature has amended the act, the legislature intended that an offender's criminal history and offender score be determined using the statutory provisions that were in effect on the day the current offense was committed.

Although certain prior convictions previously were not counted in the offender score or included in the criminal history pursuant to former versions of RCW 9.94A.525, or RCW 9.94A.030, those prior convictions need not be "revived" because they were never vacated. As noted in the minority opinions in *Cruz* and *Smith*, such application of the law does not involve retroactive application or violate ex postfacto prohibitions. Additionally, the Washington state supreme court has repeatedly held in the past that the provisions of the sentencing reform act act upon and punish only current conduct; the sentencing reform act does not act upon or alter the punishment for prior convictions. See *In re Personal Restraint Petition of Williams*, 111 Wn.2d 353, [759 P.2d 436] (1988). The legislature has never intended to create in an offender a vested right with respect to whether a prior conviction is excluded when calculating an offender score or with respect to how a prior conviction is counted in the offender score for a current offense.

LAWS OF 2002, ch. 107, § 1. The amendments go on to clarify the definition of "criminal history" under the SRA:

"Criminal history" means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere.

(a) The history shall include, where known, for each conviction (i) whether the defendant has been placed on probation and the length and terms thereof; and (ii) whether the defendant has been incarcerated and the length of incarceration.

(b) A conviction may be removed from a defendant's criminal history only if it is vacated pursuant to RCW 9.96.060, 9.94A.640, 9.95.240, or a similar out-of-state statute, or if the conviction has been vacated pursuant to a governor's pardon.

(c) *The determination of a defendant's criminal history is distinct from the determination of an offender score. A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentencing reform act remains part of the defendant's criminal history.*

LAWS OF 2002, ch. 107, § 2(13) (emphasis added). Additionally, the amendments provide that:

> The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. *Accordingly, prior convictions that were not counted in the offender score or included in criminal history under repealed or previous versions of the sentencing reform act shall be included in criminal history and shall count in the offender score if the current version of the sentencing reform act requires including or counting those convictions.*

LAWS OF 2002, ch. 107, § 3(18) (emphasis added). Lastly, the legislature stated that the 2002 SRA amendments apply "only to current offenses committed on or after the effective date of this act. No offender who committed his or her current offense prior to the effective date of this act may be subject to resentencing as a result of this act." LAWS OF 2002, ch. 107, § 4. The amendments went into effect on June 13, 2002. RCW 9.94A.525, .030.

## The *Varga* Sentencings

On July 19, 2002, Leslie Varga pleaded guilty to two felonies, second degree theft, and attempting to elude a pursuing police vehicle, which arose from events that occurred on June 13, 2002. At sentencing, the trial court calculated Varga's offender score as an 8 for his attempting to elude offense and a 6 for his second degree theft offense. The court included Varga's previously "washed out" 1990 class C felony conviction when calculating his offender score.

On December 30, 2002, Jeffrey Cleator pleaded guilty to two counts of third degree assault, which arose from events that occurred on November 1, 2002. At sentencing, the trial court calculated Cleator's offender score as a 6 for each offense. The court included Cleator's three previously "washed out" 1983 and 1984 class B and C felony convictions when calculating his offender score.

On February 13, 2003, Jason Castle pleaded guilty to unlawful storage of anhydrous ammonia and possession of stolen property in the second degree, which arose from events that occurred on September 4, 2002. At sentencing, the court calculated Castle's offender score as a 7 for each offense. The court included Castle's three previously "washed out" 1991 and 1994 juvenile felony convictions when calculating his offender score.

On February 4, 2003, Nicholas Rafvino pleaded guilty to two counts of custodial assault, which arose from events that occurred on December 16, 2002. At sentencing, the trial court calculated Rafvino's offender score as a 12 for each offense. The court included Rafvino's three previously "washed out" 1995 juvenile felony convictions when calculating his offender score.

On December 16, 2002, after a stipulated facts bench trial, the trial court convicted Frederick Tucker of unlawful possession of a controlled substance, which arose from events that occurred on October 1, 2002. The trial court calculated Tucker's offender score as a 5. The court included Tucker's previously "washed out" 1975 and 1981 class B felony convictions when calculating his offender score.

On January 10, 2003, Raven Brealan pleaded guilty to taking a motor vehicle without permission in the second degree, which arose from events that occurred on July 25, 2002. At sentencing, the trial court calculated Brealan's offender score as a 9. The court included Brealan's four previously "washed out" 1991 juvenile felony convictions when calculating his offender score.

On October 8, 2002, a jury found James Foy guilty of second degree burglary, which arose from events that occurred on August 2, 2002. At sentencing, the trial court calculated Foy's offender score as an 8. The court included Foy's three previously "washed out" 1988 and 1989 juvenile felony convictions when calculating Foy's offender score.[1]

---

[1] Foy also filed a pro se supplemental brief that presents additional grounds for review. The facts relevant to his arguments are stated *infra*.

On January 22, 2003, a jury found William Dennis guilty of possession of stolen property in the first degree, which arose from events that occurred on December 4, 2002. At sentencing, the trial court calculated Dennis's score as a 5 although the State argued that his score should be a 7. The court declined to include Dennis's four previously "washed out" 1995 juvenile felony convictions.

On October 21, 2002, Christopher Straub pleaded guilty to one count of attempting to elude a police officer, which arose from events that occurred on July 14, 2002. At sentencing, the trial court calculated Straub's offender score as an 8. The court included Straub's six previously "washed out" 1985 juvenile felony convictions when calculating Straub's offender score.

Varga, Cleator, Castle, Rafvino, Tucker, Brealan, Foy, and Straub (hereinafter Varga) appealed the trial courts' rulings that the 2002 SRA amendments require courts to include previously "washed out" prior convictions when determining criminal histories and offender scores at sentencing for crimes committed after the amendments' effective date. The State appealed Dennis's trial court's ruling that the 2002 SRA amendments impermissibly contravened this court's decisions in *Smith* and *Cruz*.

Division One of the Court of Appeals consolidated and certified Varga's and the State's appeals requesting that this court address whether the 2002 SRA amendments may require that sentencing courts include previously "washed out" prior convictions when determining defendants' criminal histories and offender scores for crimes committed after the amendments' effective date in light of this court's decisions in *Smith* and *Cruz*. We accepted review and transferred the appeals to this court for a determination of the merits.

### State v. Cruz and State v. Smith

The legislature amended the SRA in 1990 to require sentencing courts to include "washed out" juvenile sex

convictions when calculating defendants' offender scores. LAWS OF 1990, ch. 3, § 706. Before 1990, "removal of a 'washed out' conviction from the offender score was automatic and not subject to judicial discretion." *Cruz*, 139 Wn.2d at 189 (citing DAVID BOERNER, SENTENCING IN WASHINGTON § 5.6[d] (1985)). Consequently, the 1990 SRA amendments served to increase defendants' offender scores.

In *Cruz*, we considered whether these amendments could require a sentencing court to include a previously "washed out" juvenile sex conviction in the defendant's offender score. 139 Wn.2d at 189. Cruz's 1975 juvenile sex conviction "washed out" in 1987. *Id.* at 188-89; former RCW 9.94A.360 (Supp. 1988). We determined that the legislature intended that the 1990 SRA amendments apply *prospectively* to sentencing for crimes committed after the amendments' effective date. *Id.* at 191. However, we reasoned that the 1990 amendments would have to be applied retroactively to require Cruz's sentencing court to include his previously "washed out" juvenile sex conviction when calculating Cruz's offender score because "[t]he 1990 change to the [SRA] would not serve to change Cruz's existing criminal history (which *did not include* the 1975 rape as it had washed out in 1987) *unless* it was applied retroactively."[2] *Id.* at 193. Thus, since the 1990 SRA amendments were "unequivocally prospective," we held that Cruz's sentencing court could not include his "washed out" 1975 conviction when calculating his offender score because Cruz's criminal history no longer included that conviction. *Id.* We vacated Cruz's sentence and remanded to the trial court for sentencing using a calculation of an offender score that did not include the "washed out" conviction. *Id.*

---

[2] We also held that the 1990 SRA amendment was not "curative" because it did not act to clarify or technically correct an ambiguous statute. *Cruz*, 139 Wn.2d at 192 (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992)). Further, we held that the amendment was not "remedial" because it affected a substantive right, e.g., "[t]he amendment imposes an affirmative disability; it promotes the retributive aim of punishment, and there is no rational basis or nonpunitive purpose for the change." *Id.* (citing *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994)).

Similarly, in *Smith*, we considered whether amendments to the SRA in 1997 and 2000 could require sentencing courts to include Smith's previously "washed out" juvenile felony conviction when calculating his offender score.[3] 144 Wn.2d at 668-69. Smith's five juvenile felony convictions "washed out" in 1991. *Id.*; former RCW 9.94A.030(12)(b) (1996). However, the 1997 SRA amendment modified the SRA to presumably permit use of Smith's "washed out" convictions when calculating his offender score at sentencing for his 1999 offense. LAWS OF 1997, ch. 338, § 2; *Smith*, 144 Wn.2d at 669-70. After our 1999 decision in *Cruz*, the legislature feared that the 1997 amendment might face the same fate as the 1990 amendment and responded in 2000 with additional amendments to the SRA. *Id.* at 672; LAWS OF 2000, ch. 26, § 2.

The 2000 SRA amendment stated,

> Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.

LAWS OF 2000, ch. 26, § 2. In a statutory note, the legislature also stated,

> "RCW 9.94A.345 is intended to cure any ambiguity that might have led to the Washington supreme court's decision in *State v. Cruz*, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. RCW 9.94A.345 is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives."

RCW 9.94A.345 Intent—2000 c 26.

In *Smith*, the State argued that the 2000 SRA amendment evidenced the legislature's intent that sentencing courts must include Smith's previously "washed out" 1975 juvenile felony conviction when calculating his offender score. 144 Wn.2d at 671-72. But relying on *Cruz*, we

---

[3] The relevant text of the 1997 amendments at issue in *Smith* is stated *infra* at page 193.

rejected this argument holding that "[a]lthough this statement perhaps indicates a general legislative discontent with our holding in *Cruz*, there is nothing demonstrating an intent for the *retroactive* application of the 1997 amendment," because the 2000 SRA amendment "[did] not contain an explicit legislative command that the 1997 amendment applies retroactively." *Id.* at 672 (emphasis added). We also held that the 1997 amendment was not retroactive because, like the 1990 amendment in *Cruz*, it contained "no language showing the Legislature intended the 1997 amendment to apply retroactively."[4] *Id.* at 673 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268-69, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)). Because the 1997 and 2000 SRA amendments failed to meet the retroactive intent requirement we articulated in *Cruz*, we vacated Smith's sentence and remanded the case to the trial court for sentencing using an offender score that did not include his previously "washed out" juvenile felony conviction. *Id.* at 674-75.

Application of the 2002 SRA Amendments to *Varga*

Varga argues that the 2002 SRA amendments should succumb to the same fate as the SRA amendments at issue in *Smith*. He asserts that to meet the requirement that we articulated in *Smith*, the legislature must explicitly state its intent that the 2002 amendments apply retroactively. Varga claims that the legislature fails to provide such a statement of retroactive intent and that the 2002 SRA amendments improperly contravene our judicial construction of the 1997 SRA amendments in *Smith*.

■■■ Conversely, the State argues that the legislature may amend the SRA to include previously "washed out" convictions as part of defendants' criminal histories and offender scores provided that the amendments apply prospectively. Here, the legislature clearly intended that the

---

[4] Additionally, like our decision in *Cruz*, we held that the 1997 SRA amendment was not "curative" or "remedial" since the amendment "substantively changed the meaning of 'criminal history' " rather than merely relating to "practice, procedures, or remedies." *Smith*, 144 Wn.2d at 674.

amendments apply prospectively at sentencing for crimes committed on or after June 13, 2002. Since Varga committed his crime on June 13, 2002, the amendments require courts to include his previously "washed out" conviction. We agree.

We have repeatedly held that sentencing courts must "look to the statute in effect at the time [the defendant] committed the [current] crimes" when determining defendants' sentences. *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003); *see Williams*, 111 Wn.2d at 361 (applying the SRA "wash out" provisions in effect at the time the defendant was sentenced for his crimes); *see also State v. Dunaway*, 109 Wn.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987) (holding that the 1987 SRA amendments to the definition of " '[s]ame criminal conduct' " do not apply to defendant's 1984 and 1986 crimes (quoting LAWS OF 1987, ch. 456, § 5)). Here, the 2002 SRA amendments were in effect when Varga committed his crime on June 13, 2002. LAWS OF 2002, ch. 107, § 4. These amendments explicitly state that a defendant's criminal history includes "washed out" convictions. LAWS OF 2002, ch. 107, § 2(13). Further, the legislature directed sentencing courts to consider these previously "washed out" convictions when calculating offender scores if the current version of the SRA requires consideration of that type of conviction. LAWS OF 2002, ch. 107, § 3(18).

Our decisions in *Cruz* and *Smith* do not require a contrary result. It is well-established that the legislature may effectively overrule our decisions interpreting statutory terms by prospectively amending a statute. *See Dunaway*, 109 Wn.2d at 215-16 & n.6 (acknowledging that the legislature may enact a prospective SRA amendment that alters the definition of " '[s]ame criminal conduct,' " in spite of the court's construction of the term in a former version of the SRA); *Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 37-38, 323 P.2d 241 (1958) (holding that the doctrine of stare decisis does not apply when the legislature amends a statutory term that the court has previously interpreted);

*State v. Dolson*, 138 Wn.2d 773, 779, 982 P.2d 100 (1999) (noting that the legislature "implicitly overruled" *State v. Baker*, 49 Wn. App. 778, 745 P.2d 1335 (1987) by amending RCW 46.20.205). In both *Cruz* and *Smith*, we reached our decisions by construing the statutory terms of the SRA in effect at that time.

Our holding in *Cruz* rests on an interpretation of the statutory definition of "criminal history" in effect at Cruz's sentencing. 139 Wn.2d at 193. In *Cruz*, we reasoned that "[u]nder the SRA a defendant's offender score is determined by the 'offenses for which the defendant was convicted and by the defendant's "criminal history" as that term *is defined* in the SRA.' " *Id.* (quoting *Williams*, 111 Wn.2d at 357-58). The definition of "criminal history" provided that "[a] prior conviction is one that *exists* before the date of sentencing for the current offense." *Id.* (emphasis added). We concluded that Cruz's "washed out" juvenile sex conviction no longer existed under the definition of criminal history in the SRA in effect at that time; therefore, any amendment must act retroactively to require Cruz's sentencing court to include his nonexistent conviction when calculating his offender score. *Id.*

Relying on *Cruz*, we reached a similar conclusion in *Smith*, holding that the 1997 and 2000 SRA amendments failed to evidence sufficient retroactive intent. 144 Wn.2d at 672-73. The 1997 SRA amendments at issue in *Smith* modified the definition of "criminal history." The amendments provided that

> "[c]riminal history" means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere. The history shall include, where known, for each conviction (a) whether the defendant has been placed on probation and the length and terms thereof; and (b) whether the defendant has been incarcerated and the length of incarceration.

Laws of 1997, ch. 338, § 2(12). Critically, we determined that this amendment did not clearly illustrate the legisla-

ture's intent to include previously "washed out" convictions as part of a defendant's criminal history. 144 Wn.2d at 674.

In contrast, the 2002 SRA amendments irrefutably alter the definition of criminal history by adding that "[a] conviction may be removed from a defendant's criminal history only if it is vacated," and "[a] prior conviction that was not included in an offender score calculated pursuant to a former version of the sentencing reform act remains part of the defendant's criminal history." LAWS OF 2002, ch. 107, § 2(13)(b), (c). Unlike previous versions of the SRA in *Cruz* and *Smith*, this definition of "criminal history" explicitly includes previously "washed out" convictions. Moreover, the amendments direct sentencing courts to include previously "washed out" convictions if the current version of the SRA requires consideration of such convictions when calculating defendants' offender scores. LAWS OF 2002, ch. 107, § 3(18).

Varga also argues that our decisions in *Cruz* and *Smith* afforded "washed out" convictions a "quasi-expunged" legal status. *See State v. Dean*, 113 Wn. App. 691, 697, 54 P.3d 243 (2002) ("Citing *Cruz*, our Supreme Court again determined that any future legislative amendment would have to operate retroactively to change the washed-out (quasi-expunged) status of prior convictions."), *review denied*, 149 Wn.2d 1009 (2003). Because "washed out" convictions enjoy this "quasi-expunged" legal status, Varga claims that the legislature may not act prospectively to modify the SRA to include previously "washed out" convictions.

Our precedent, however, clearly establishes that statutes defining punishment fall within the province of the legislature. *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980) ("Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts."). " 'Fixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions.' " *State v. Thorne*, 129 Wn.2d 736, 767, 921 P.2d 514 (1996) (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937)).

We declined to rest our holdings in *Cruz* and *Smith* on constitutional grounds and instead rested our holding on an interpretation of the SRA's terms in effect at that time. The legislature may exercise its plenary powers to determine crimes and punishment by prospectively amending the SRA to require sentencing courts to include previously "washed out" convictions when calculating offender scores.[5] *See Windust*, 52 Wn.2d at 37 ("Of course, it is the duty of the court to invalidate a statute if it contravenes the constitution. . . . For the court to repeal a statute for no other reason than that it conflicts with the doctrine of *stare decisis*, is an obvious encroachment upon the legislative branch of the government.").

Lastly, Varga contends that when the legislature amended RCW 9.94A.030 and RCW 9.94A.525 it violated separation of powers by contravening our interpretation of the SRA in *Cruz* and *Smith*. Without citing to any authority, Varga claims that the legislature may not prospectively amend the SRA and thus avoid the interpretation we placed on it in *Cruz* and *Smith*. He contends that in order to respect separation of powers between the judicial and legislative branches, the legislature must enact a new statute that wholly replaces previous versions. We do not find this argument persuasive.

As previously noted, this court has repeatedly held that the legislature may prospectively overrule this court's interpretations of statutory terms. *See Dunaway*, 109 Wn.2d at 215-16 & n.6; *Windust*, 52 Wn.2d at 37; *Dolson*, 138 Wn.2d at 779. The legislature frequently moves to amend or add to the existing statutory language. We have never demanded that the legislature wholly replace its existing statute to avoid contravening this court's interpretation of a

---

[5] We specifically declined to find that defendants possessed a constitutional "vested right" in *Cruz* and *Smith*. In both cases, we were asked to determine whether the SRA amendments at issue were remedial in nature. We concluded that the SRA amendments were not remedial because they did not relate to "practice, procedures, or remedies, and [do] affect a *substantive* or *vested* right." *Cruz*, 139 Wn.2d at 192 (emphasis added); *see also Smith*, 144 Wn.2d at 674. However, we determined that the SRA amendments affected a *substantive* rather than *vested* right. *Cruz*, 139 Wn.2d at 192; *Smith*, 144 Wn.2d at 674.

previous version's statutory terms. *See Windust*, 52 Wn.2d at 37 ("Interpretation of the meaning of a statute ends where the amendment or repeal of it begins.").

In sum, we hold that the legislature may prospectively amend the SRA to include "washed out" convictions in defendants' criminal histories and require sentencing courts to include "washed out" convictions when calculating offender scores for crimes committed after the amendments' effective date.

## Vested Rights

Varga also argues that the application of the 2002 SRA amendments violated his substantive due process rights under the fifth and fourteenth amendments to the United States Constitution and Washington Constitution articles I and III, by depriving him of a vested right in the "washed out" status of his prior convictions. We disagree.

■ ■ "A retroactive law violates due process when it deprives an individual of a vested right." *State v. Shultz*, 138 Wn.2d 638, 646, 980 P.2d 1265 (1999) (citing *State v. Hennings*, 129 Wn.2d 512, 528, 919 P.2d 580 (1996)). We have held that:

> A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation.

*State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973); *State v. Blank*, 131 Wn.2d 230, 248, 930 P.2d 1213 (1997); *Williams*, 111 Wn.2d at 363 (citing *State v. Randle*, 47 Wn. App. 232, 241, 734 P.2d 51 (1987)). Thus, the critical inquiry is whether the prospective 2002 SRA amendments to RCW 9.94A.525 and 9.94A.030 alter the legal consequences of Varga's previously "washed out" conviction. *Randle*, 47 Wn. App. at 240-41.

In *Scheffel*, this court considered whether the Washington Habitual Traffic Offenders Act, chapter 46.65 RCW, applied retroactively to deprive defendants of a vested right. 82 Wn.2d at 878. Chapter 46.65 RCW went into effect on August 9, 1971, with the goal of improving highway safety by authorizing revocations of driver licenses from habitual offenders convicted of three or more serious traffic offenses within a five-year period. *Id.* at 874-75. Scheffel had been convicted of two serious traffic offenses in 1970 and committed a third offense on October 2, 1971 after chapter 46.65 RCW came into effect. *Id.* at 874. Consequently, the State moved to classify him as a habitual offender and revoke his license. *Id.* at 875. Scheffel argued that chapter 46.65 RCW applied retroactively to deprive him of a vested right because it "imposes a new penalty, unfairly alters one's situation to his disadvantage, punishes conduct innocent when it occurred, and constitutes an increase of previously imposed punishment." *Id.* at 878. We disagreed, holding that:

> We find no vested right which has been impaired or taken away. The act does not impose any new duty, and it does not attach any disability on either of the defendants in respect to transactions. The defendants could have avoided the impact of the act by restraining themselves from breaking the law of this state.

*Id.* at 878-79.

Like chapter 46.65 RCW in *Scheffel*, the 2002 SRA amendments do not alter the underlying legal consequences of Varga's prior convictions. *See Randle*, 47 Wn. App. at 240-41; *Williams*, 111 Wn.2d at 363. The 2002 SRA amendments serve only to enhance the penalty for Varga's crime that he committed after the amendments' effective date. *See Blank*, 131 Wn.2d at 248 (" 'A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute . . . .' " (alteration in original) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974))); *Landgraf*, 511 U.S. at 269

("A statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law." (citing *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S. Ct. 554, 121 L. Ed. 2d 474 (1992))). Indeed, Varga could have avoided the effect of the 2002 SRA amendments by not committing a subsequent crime.

The 2002 SRA amendments are also distinguishable from the statute at issue in *State v. T.K.*, 139 Wn.2d 320, 323-24, 987 P.2d 63 (1999), which Varga also cites to support his vested rights argument.[6] In *T.K.*, we considered whether T.K. had a vested right to expunge his 1993 juvenile conviction from his record after two crime-free years provided that he committed no new offenses. *Id.* at 327. At the time T.K. committed his juvenile offense, former RCW 13.50.050(11) (1992) required trial courts to expunge such convictions upon filing of a motion. *Id.* at 325. However, in 1997 the legislature amended RCW 13.50.050(11) to effectively remove T.K.'s ability to petition a court to expunge his record. *Id.* at 324; LAWS OF 1997, ch. 338, § 40. We concluded that T.K. had a vested right under the former statute to expunge his conviction. 139 Wn.2d at 332. Critically, we reached that conclusion because T.K. had met the statutory conditions under the former statute that required courts to expunge his conviction and that T.K. could petition the court to expunge his record. *Id.* at 334.

Unlike T.K., Varga could not exercise his alleged "right" to the "washed out" status of his prior convictions until he committed a new offense. T.K. on the other hand could have moved the court to expunge his juvenile adjudication under the former version of RCW 13.50.050(11). Given that Varga's ability to exercise his right depended on his commission of a new offense, we cannot conclude that Varga is entitled to the same protections as T.K. *See In re Estate of Quick*, 33 Wn.2d 568, 571-72, 206 P.2d 489 (1949) (holding

---

[6] Varga also claims that *Cruz* and *Smith* held that defendants possessed a "vested right" in the "washed out" status of their convictions. However, in both cases we specifically declined to hold that defendants possessed a vested right, holding that the SRA amendment affected a *substantive* not vested right. *Cruz*, 139 Wn.2d at 192; *Smith*, 144 Wn.2d at 673.

that a right vests provided that no future time or event is required); *see also In re Estate of Baird,* 131 Wn.2d 514, 520-21, 933 P.2d 1031 (1997). Therefore, we do not find *T.K.* persuasive.

Because the 2002 SRA amendments do not alter the underlying legal consequences of Varga's previously "washed out" convictions, we hold that Varga does not have a vested right in the "washed out" status of his conviction. Thus, the trial court properly sentenced him when it included his previously "washed out" conviction when calculating his offender score.

### Additional Claims

■ Foy filed a pro se supplemental brief raising three additional issues for review. Since we transferred this case from the Court of Appeals for a determination of the merits, we must address Foy's claims. Foy argues that he received ineffective assistance of counsel, that the trial court abused its discretion by refusing to grant him a continuance or to appoint new counsel, and that the evidence was insufficient to sustain his second degree burglary conviction.[7]

### Ineffective Assistance of Counsel

■ Foy claims that his right to effective assistance of counsel under the federal and state constitutions was violated. In order to show that he received ineffective assistance of counsel, Foy must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by his counsel's errors such that "but for counsel's errors the outcome of the proceedings would have been different." *State v. Brett,* 126 Wn.2d 136, 199, 892 P.2d 29 (1995), *cert. denied,* 516 U.S. 1121 (1996); *In re Pers. Restraint of Stenson,* 142 Wn.2d

---

[7] Foy also appears to claim that his due process rights were violated when the prison denied him access to legal resources at the prison library. However, access to adequate counsel satisfies Foy's due process rights. *See State v. Dougherty,* 33 Wn. App. 466, 470, 655 P.2d 1187 (1982).

710, 720, 16 P.3d 1 (2001) (citing *Strickland v. Washington*, 466 U.S 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)); *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). We presume that Foy received effective assistance from counsel; this presumption will be overcome only by a clear showing of incompetence. *State v. Piche*, 71 Wn.2d 583, 590-91, 430 P.2d 522 (1967); *State v. Sherwood*, 71 Wn. App. 481, 483, 860 P.2d 407 (1993). We will not find ineffective assistance of counsel if the actions Foy complains about go to the theory of the case or trial tactics. *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994).

Foy principally argues that he received ineffective assistance when his counsel refused to subpoena the arresting officers to establish that Foy's victim was holding him at gunpoint when they arrived.[8] However, Foy fails to demonstrate how counsel's failure to call the officers to testify about Foy being held at gunpoint by the victim was unreasonable since it involved an issue unrelated to the elements of his second degree burglary charge. Further, he fails to show how it would have impacted the jury's determination that he committed second degree burglary of the victim's shed.[9] *Cf. State v. Young*, 62 Wn. App. 895, 907-08, 802 P.2d 829, 817 P.2d 412 (1991) (concluding that defendant's right to effective assistance of counsel was violated when his counsel refused to present evidence that involved statements by the complaining witness that the defendant had not committed the charged crimes).

Other than his counsel's refusal to call the arresting officers to testify, Foy fails to point to any specific evidence in the record that demonstrates that his counsel acted

[8] Foy also wanted to call the taxicab driver who dropped him off near the victim's house to apparently testify about what he was wearing and his demeanor to support his claim that he did not intend to burglarize the victim's shed. Again, Foy fails to state how such testimony would have changed the outcome of his trial given that he was apprehended by the victim while exiting the victim's shed. Thus, any relevance of the taxicab driver's testimony to Foy's trial was negligible.

[9] Foy also argues that his counsel failed to make a motion to the court for an additional bail hearing despite Foy's request. However, Foy fails to indicate how his counsel's failure to request another bail hearing denied him a fair trial or demonstrated ineffective assistance of counsel.

incompetently. Indeed, when the trial court questioned counsel about his representation of Foy in response to Foy's complaints, counsel indicated a familiarity with Foy's case and that he had discussed legal theories and strategies with Foy. Foy's Report of Proceedings (RP) at 5-6. Because Foy has failed to demonstrate that his counsel's performance "fell below an objective standard of reasonableness," we reject Foy's claim of ineffective assistance of counsel. *Stenson*, 132 Wn.2d at 705.

## Trial Court's Abuse of Discretion

Foy also claims that the trial court erred in refusing to appoint Foy new counsel and denying Foy's motion for a continuance to find new counsel. However, "[a] defendant does not have an absolute, Sixth Amendment right to choose any particular advocate." *Stenson*, 132 Wn.2d at 733 (citing *State v. DeWeese*, 117 Wn.2d 369, 375-76, 816 P.2d 1 (1991)). To justify appointment of new counsel, a defendant "must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Id.* at 734. Generally, a defendant's loss of confidence or trust in his counsel is not sufficient reason to appoint new counsel. *Id.* (citing *Johnston v. State*, 497 So. 2d 863, 868 (Fla. 1986)). On appeal, we review a trial court's decision to deny new court appointed counsel and motions for continuances for abuse of discretion. *See id.* at 733-34 (citing *DeWeese*, 117 Wn.2d at 376); *see also State v. Rosborough*, 62 Wn. App. 341, 346, 814 P.2d 679 (1991).

Other than his own general dissatisfaction and distrust with counsel's performance, Foy fails to point to anything in the record which would demonstrate that the trial court abused its discretion when it denied Foy's request for new counsel and a continuance. Here, the trial court judge afforded Foy the opportunity to explain the reason for his dissatisfaction with counsel. Foy's RP at 4-5. Moreover, the

trial court questioned Foy's counsel about the merits of Foy's complaint. *Id.*; *see Stenson*, 132 Wn.2d at 737 (holding that the trial court's denial of new court appointed counsel was not abuse of discretion given that he considered the defendant's complaints and evaluated counsel's performance); *see also Rosborough*, 62 Wn. App. at 347-48. In response, Foy's counsel stated that he had consulted with Foy about trial tactics and advised Foy of his legal rights. Foy's RP at 5. Consequently, the record indicates that the trial court considered the merits of Foy's requests and provides us with no evidence of abuse of discretion.

### Insufficiency of Evidence

Lastly, Foy claims that insufficient evidence exists to prove the element of intent for his second degree burglary conviction. On a challenge of insufficient evidence, we review the evidence in the light most favorable to the State to determine "whether . . . any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We may infer criminal intent from conduct, and circumstantial evidence as well as direct evidence carries equal weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Foy argues that the State failed to produce sufficient evidence to show that he intended to take items from the shed where the victim captured him. To support this argument, he claims that the victim's trial testimony that items in the shed were disturbed conflicted with the victim's initial statements to police. However, this alleged discrepancy is not sufficient to call the jury's conclusions into doubt. The jury is entitled to weigh the credibility of the victim's testimony. *Stiley v. Block*, 130 Wn.2d 486, 501-02, 925 P.2d 194 (1996) (citing *State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969)). Here, the jury concluded that the victim's testimony about the disturbed items was credible.

Further, the record indicates that Foy was captured by the victim while exiting the shed and that the items in the

shed were disturbed after Foy's robbery attempt. Foy's RP at 34, 40-41. These facts are sufficient to reasonably infer that Foy intended to steal items from the shed.[10] *See Delmarter*, 94 Wn.2d at 638. Thus, this court must deny Foy's insufficient evidence claim.

## Conclusion

The legislature may prospectively amend the SRA to require that courts include previously "washed out" convictions when calculating offender scores and has done so by the plain language of the 2002 SRA amendments. The 2002 SRA amendments do not act retroactively to alter the underlying legal consequences of Varga's previously "washed out" conviction, and thus, he cannot claim a vested right in the "washed out" status of his prior conviction. Accordingly, we affirm the trial courts' decisions in *Varga*, *Cleator*, *Castle*, *Rafvino*, *Tucker*, *Brealan*, *Foy*, and *Straub*, and reverse the trial court's decision in *Dennis*.

ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

---

[10] Foy also argues that the police failed to conduct an investigation to gather sufficient facts to show that he intended to commit second degree burglary. However, sufficient facts exist in the record for a rational trier of fact to conclude that Foy committed second degree burglary.