**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50837-1-II |
| Respondent, | |
| v. | |
| DENNIS JAMES JENKINS, JR., | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Dennis J. Jenkins, Jr. appeals his convictions for residential burglary and making or having burglar tools.  Jenkins argues that (1) the trial court violated his right to self-representation by denying his request to self-represent, (2) the trial court abused its discretion by denying his request for substitute counsel, and (3) insufficient evidence supported his conviction for making or having burglar tools.  We hold that the trial court did not violate Jenkins's right to self-representation and did not abuse its discretion by denying Jenkins's request for substitute counsel.  However, we hold that insufficient evidence supported Jenkins's conviction for making or having burglar tools.  Consequently, we affirm Jenkins's residential burglary conviction, reverse his making or having burglar tools conviction, and remand for the trial court to dismiss the making or having burglar tools charge with prejudice.

FACTS

I. BACKGROUND FACTS

Around 4:30 A.M. on March 2, 2017, Jeffrey Sturdevant was walking from his uncle's home in Longview, Washington, to the home he shared with his grandmother.  Sturdevant noticed a

person sitting on a bicycle in the alley near his home wearing a black hooded sweatshirt. Sturdevant then saw a second person, also wearing a black hood with gray hair and beard, exit through the garage door of a home, pulling a bicycle and a big screen television. Sturdevant noticed that the back door to the home was open.[1] Sturdevant witnessed the second man put the television on his shoulder and ride away on his bicycle. Sturdevant called the Longview Police Department to notify them of the situation.

After receiving Sturdevant's call, on-duty police officer, Nicholas Woodard, proceeded in his patrol vehicle in the direction of the call. While driving, Officer Woodard saw two male bicyclists cross the street. Officer Woodard noticed that the second bicyclist, later identified as Jenkins, carried a flat screen television on his shoulder. Jenkins, while carrying the television, turned down an alley, at which point Officer Woodard turned on his emergency lights and pursued. Jenkins stopped in the alley and set the bicycle and television down. Officer Woodard then placed Jenkins under arrest and searched his person. During the search, Officer Woodard discovered at least six rolls of Kirkland brand toilet paper, a BluRay/DVD player, an Apple TV adapter, electrical cords, two dollars in quarters, and a lanyard with a ceramic spark plug attached.

Officer Emilio Villagrana also responded to Sturdevant's call and went to the residence where the burglary was alleged to have occurred. He noticed pry marks near the door handle on the frame where the door had been pried open. Once inside the home, Officer Villagrana observed a wall mount with no television, Kirkland brand toilet paper, and items tossed about or knocked over. The officers asked Sturdevant to return to where he witnessed the man leaving the garage

---

[1] The owner of the home later confirmed that he had not given anyone a key or permission to enter his home or remove his property.

with a television. Sturdevant returned and identified Jenkins, whom Officer Woodard had apprehended, as the man he had seen leaving the garage.

## II. PROCEDURAL FACTS

The State charged Jenkins with one count of residential burglary and one count of making or having burglar tools.

The parties convened on April 27, 2017, for a readiness hearing with trial set to begin the following week. At the hearing, Jenkins asked the trial court for the appointment of substitute counsel. Jenkins referenced being denied paperwork he requested from his attorney and his attorney's refusal to seek a continuance. Jenkins explained:

> I'd like a different attorney, if that's possible. I just don't feel that he's adequate [c]ounsel for me. We seem to butt heads and I just -- if I could have a different attorney I'd appreciate it. I just -- I feel pressured by him. Yesterday he came to see me, told me that I had ten minutes to sign a plea agreement, I just didn't feel comfortable with that, I just -- I feel pressured and I'd rather have a different attorney. I'd like to seek a different attorney.

Suppl. Verbatim Report of Proceedings (VRP) at 3-4. The trial court asked Jenkins's attorney if he felt things had broken down to a point that he could no longer communicate with Jenkins. Jenkins's counsel replied, "No, not at all." Suppl. VRP at 4. The trial court explained to Jenkins that he could not pick and choose his attorney. Jenkins responded that he did not believe his attorney had his best interest at heart, and that they did not seem to get along. The trial court denied Jenkins's request, stating:

> So I'm not hearing that there is any breakdown in the communication. It may be that you butt heads. It may be you don't agree with each other, and at the same time that doesn't mean that it's to a point where [defense counsel] can no longer represent you. That's not what I'm hearing.
>
> So with that, I will not be substituting any attorney for [defense counsel].

Suppl. VRP at 6.

At that point, Jenkins stated that he wished to represent himself. After confirming that Jenkins understood what representing himself would entail, the trial court asked, "So at this point why do you want to represent yourself?" Suppl. VRP at 8. Jenkins responded:

> Because I -- I just -- I honestly feel that -- that [defense counsel] does not have my best interest at heart and I just -- I mean, I don't know how to represent myself through the procedures, but I just -- I feel pressured by him and I just -- I don't know.

Suppl. VRP at 8. The trial court denied Jenkins's request to represent himself, explaining:

> Well, at this time I'm going to deny that you represent yourself, because that's not what I'm hearing. I'm hearing that you don't want [defense counsel]. What I'm hearing is that you want a different attorney, that you're not getting it, so therefore you're going to be representing yourself. And, again, from everything I've heard that's not what you're wanting, you're just wanting a different attorney.
>
> And, so, at this point I think what I'm inclined to do is not substitute a different attorney, but it sounds like maybe -- I understand the State is prepared to proceed to trial, but what I'm inclined to do instead is to look at the Waiver of Speedy Trial that the Defendant was requesting and re-set the dates so [defense counsel], you can speak further with your client. And you can have more conversation with [defense counsel] about where you see things and have more opportunity.
>
> And if at that point you're still facing that same feeling and same issue, you can certainly bring this back up before the Court again. But I think at this point I'm just going to give it some more time.
>
> You know, I'm not hearing that you understand the process or procedures, or again, that that's even what you want to do. So I just don't want to see you in some position where you don't have legal counsel through this process.

Suppl. VRP at 8-9. Although the State indicated it was ready to proceed to trial, the trial court granted Jenkins's request for a continuance to allow him time to consult with this attorney about how to proceed. The trial court also informed Jenkins that after consulting with his attorney, he could renew his request of self-representation.

At the next readiness hearing on May 11, 2017, after the trial court stated that trial would begin on May 18, Jenkins made a second request for a new attorney, arguing again that (1) his attorney did not have his best interests at heart, (2) he had not received the paperwork he had requested, (3) he had filed a bar complaint against his attorney, and (4) he was not prepared for trial. The trial court clarified, "So, are you asking to represent yourself?" II VRP at 5. Jenkins replied that he did not wish to represent himself, but wanted a different attorney.

The trial court then inquired into his request for a new attorney. The trial court confirmed that Jenkins and his attorney had talked about the case and reviewed discovery together, but that they disagreed as to how to move forward with the case. The trial court commented that it sounded like Jenkins and his attorney were communicating and they just disagreed. Jenkins responded, "Somewhat, yes." II VRP at 7. The trial court asked Jenkins's attorney whether the filing of a bar complaint against him would pose any issues in representing Jenkins, to which the attorney stated that it would not. The trial court denied Jenkins's request for new counsel, explaining:

> [A]t this point, what I'm hearing from you is that you're able to communicate with your attorney; that there's – you're able to dialogue; you've taken a look at the – the [d]iscovery and the information that the State has against you; and that you disagree – you're able to communicate and you disagree with the judgments of [defense counsel] and you would like to see things done in maybe a different way.

II VRP at 7-8.

At trial, Officer Woodard testified. He identified the lanyard with the ceramic plug, which he had discovered on Jenkins during his search incident to arrest. Officer Woodard explained "nuisance kids just like to chuck `em at windows when they drive by." I VRP at 108.

> [State]: How is that – that tool, now that you've put it in here – how is that used to – how would that function?
>
> [Woodard]: I've never used one, so I guess I'd presume with how it's –

5

[State]: Based on your experience in –

[Woodard]: How it – how it's designed with the loop, I'm assuming that that's going to be the end that is either placed over a finger or two, held, and then it's easy to then swing the item or, you know, swing it into something, glass.

. . . .

[Woodard]: And that action with the ceramic, I don't know how it all works or whatever, but ceramic has a great capability of shattering glass.

[State]: Okay. And that was on the Defendant's person when you searched him?

[Woodard]: It was in his pocket, yes, sir.

I VRP at 116.

Following deliberations, a jury returned guilty verdicts on both charges.

Jenkins appeals.

ANALYSIS

I. RIGHT TO SELF-REPRESENTATION

Jenkins first argues that the trial court denied his right to self-representation when it denied his request at the readiness hearing to represent himself. The State argues that Jenkins's request was equivocal and he later informed the court he did not want to self-represent. We hold that, because Jenkins's request was equivocal, his claim fails.

Both the Sixth Amendment to United States Constitution and article I, section 22 of the Washington Constitution provide criminal defendants with the right to self-representation. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Madsen*, 168 Wn.2d at 503. For example, a trial court may not deny the defendant's right to represent himself "based on grounds that self-representation would be detrimental to the defendant's ability to present his case." *Madsen*, 168 Wn.2d at 505.

6

But the right to self-representation is not self-executing or absolute. *Madsen*, 168 Wn.2d at 504. To invoke the right to self-representation, a defendant must unequivocally state a request to proceed without counsel. *State v. Coley*, 180 Wn.2d 543, 560, 326 P.3d 702 (2014). The request also must be timely. *Coley*, 180 Wn.2d at 560. If the request for self-representation is unequivocal and timely, the trial court must then determine whether the request is voluntary, knowing, and intelligent. *Madsen*, 168 Wn.2d at 504. And the trial court must indulge in every reasonable presumption against a defendant's waiver of his right to counsel. *Madsen*, 168 Wn.2d at 504.

The requirement that a request for self-representation be unequivocal prevents a defendant from taking advantage of the mutual exclusivity of the constitutional rights to counsel and self-representation. *See State v. Stenson*, 132 Wn.2d 668, 740–41, 940 P.2d 1239 (1997). If a defendant was permitted to vacillate between a desire to be represented by counsel and a desire to represent himself, then the defendant would have a colorable claim on appeal that a constitutional right was denied no matter who represented him at trial. *Stenson*, 132 Wn.2d at 741. "Even when a request is unequivocal, a defendant may still waive the right to self-representation by subsequent words or conduct." *State v. Vermillion*, 112 Wn. App. 844, 851, 51 P.3d 188 (2002).

We review a trial court's ruling on a defendant's request for self-representation for an abuse of discretion. *Coley*, 180 Wn.2d at 559. An abuse of discretion occurs when the ruling is manifestly unreasonable, relies on unsupported facts, or applies an incorrect legal standard. *Coley*, 180 Wn.2d at 559.

Here, Jenkins's request to represent himself was equivocal. The record reflects that Jenkins desired substitute counsel; only after the trial court denied his request for substitute counsel did Jenkins indicate a desire to self-represent. When the trial court pressed Jenkins to ensure that he

truly wanted to proceed pro-se, Jenkins waivered. Jenkins reiterated his dissatisfaction with his counsel, expressed doubt as to his ability to represent himself, and concluded by saying, "I just – I don't know. I just . . . [.]" Suppl. VRP at 8. Given Jenkins's equivocation, we hold that the trial court did not abuse its discretion by denying his request for self-representation.

## II. SUBSTITUTION OF COUNSEL

Jenkins also argues that the trial court abused its discretion when it denied his request for a new attorney. The State argues that the trial court did not abuse its discretion because there was no evidence that a substitute attorney was necessary. Because the record does not reflect that Jenkins showed good cause to warrant substitution of counsel, we agree with the State.

A defendant does not have an absolute right to choose any particular advocate. *Stenson*, 132 Wn.2d at 733; *see also State v. Schaller*, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007) (goal of Sixth Amendment is to guarantee an effective advocate rather than to ensure that the defendant is represented by the lawyer he prefers). "A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Stenson*, 132 Wn.2d at 734. Attorney-client conflicts justify substitution of counsel only when counsel and defendant are so at odds as to prevent the presentation of an adequate defense. *Stenson*, 132 Wn.2d at 734. The general loss of trust or confidence alone is not sufficient to substitute new counsel. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004).

In examining the extent of the conflict between a defendant and his attorney, we consider the extent and nature of the breakdown in the relationship and its effect on the representation actually presented. *Schaller*, 143 Wn. App. at 270. "Because the purpose of providing assistance

8

of counsel is to ensure that defendants receive a fair trial, the appropriate inquiry necessarily must focus on the adversarial process, not only on the defendant's relationship with his lawyer as such." *Schaller*, 143 Wn. App. at 270. Whether an indigent defendant's dissatisfaction with his court-appointed counsel justifies the appointment of new counsel is a matter within the trial court's discretion. *Varga*, 151 Wn.2d at 200.

Here, Jenkins contends that an irreconcilable breakdown in attorney-client communication warranted substitution of counsel. However, the record does not support his contention. When asked by the trial court about the communication between Jenkins and himself, Jenkins's attorney explicitly stated that there had not been a breakdown in communication. His attorney explained that he read the police reports to Jenkins in jail, reviewed the discovery with him, discussed Jenkins's criminal history with him, and that the filing of the bar complaint would not cause issues with representing Jenkins. Jenkins also repeatedly told the trial court that he wanted a new attorney appointed because he and his attorney did not get along and disagreed about trial strategy. However, general dissatisfaction with counsel's performance is insufficient to warrant substitution of counsel. *Varga*, 151 Wn.2d at 200-01. Moreover, nothing in the record reflects that Jenkins's counsel provided inadequate representation depriving Jenkins of a fair trial.

Given Jenkins's failure to show any good cause to warrant the substitution of counsel, we hold that the trial court did not abuse its discretion by denying Jenkins's request for substitute counsel.

### III. SUFFICIENCY OF THE EVIDENCE

Finally, Jenkins argues that insufficient evidence supported his conviction for making or having burglar tools. We agree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. *State v. Slighte*, 157 Wn. App. 618, 626, 238 P.3d 83 (2010).

> Under RCW 9A.52.060:
>
> Every person who shall make or mend or cause to be made or mended, or have in his or her possession, any engine, machine, tool, false key, pick lock, bit, nippers, or implement adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a burglary, or knowing that the same is intended to be so used, shall be guilty of making or having burglar tools.

Here, Officer Woodard found Jenkins in possession of the allegedly incriminating tool, a ceramic sparkplug with a lanyard attached, immediately after he had stolen a flat screen television from a home he did not have permission to enter after prying open the door. However, Officer Woodard's testimony was insufficient for a rational jury to conclude beyond a reasonable doubt that Jenkins possessed the sparkplug and lanyard with an intent to use it in the commission of a burglary. Officer Woodard testified that he "presumed" and "assumed" that the tool was used to break glass by swinging it, but admitted that he did not "know how it all works." 1 VRP at 116. Further, Officer Woodard connected the lanyards to "nuisance kids" who "just like to chuck `em

10

at windows when they drive by." I VRP at 108. Nothing in Officer Woodard's testimony about the sparkplug and lanyard connected the tool to the commission of burglaries. Indeed, in the burglary here, Jenkins obtained entry by prying open the door, not shattering glass. Taking the evidence in the light most favorable to the prosecution, the evidence here was not sufficient for a rational jury to conclude beyond a reasonable doubt that Jenkins possessed tools adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent to use them to commit burglary. Consequently, we affirm Jenkins's residential burglary conviction, reverse his making or having burglar tools conviction, and remand for the trial court to dismiss the making or having burglar tools charge with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

BJORGEN, J.