**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 86570-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JOKANE RIKLON, | |
| Appellant. | |

BIRK, J. — Jokane Riklon appeals his conviction for unlawful possession of a firearm in the second degree, arguing he was denied his right to counsel under the Sixth Amendment and article 1, section 22 of the Washington Constitution. After granting an earlier motion to discharge appointed counsel, the superior court denied Riklon's later motion to discharge appointed counsel. Because Riklon did not show an irreconcilable conflict or total breakdown in communication between him and his counsel, and because Riklon was not prejudiced by the representation he received, we affirm.

I

In March 2023, the King County prosecutor charged Riklon with one count of unlawful possession of a firearm in the second degree. Separately, in March 2023, the Benton County prosecutor filed a charge against Riklon for robbery in the first degree, with a deadly weapon. In April 2023, in the King County matter, Riklon moved to discharge his appointed counsel because he did not see "eye to

eye" with him "when it comes to case strategy." Riklon explained that he was ready to go to trial but his counsel kept delaying. After further questioning, the court concluded, "I don't hear a basis to give you a new lawyer. I hear that you're being told bad news that you don't like and that you're uncomfortable with and sometimes your lawyer's job is to give you bad news." The court asked Riklon to try to work with his counsel, but also told him he could come back if the matter did not improve.

In May 2023, Riklon again moved to discharge his appointed counsel for "the same reasons" as before. Riklon expressed frustration that he was ready to go trial but his counsel was not. The court explained that "given the charges here, this case is going to take some time to get ready," and "if I give you a new attorney, it's going to slow things down, not speed things up." Riklon said he was not comfortable going to trial with his counsel, and when asked why by the judge, Riklon replied, "I don't know. Just reasons." Riklon's counsel said that Riklon did not trust him and did not want to talk to him anymore. The court asked Riklon if he understood that new counsel would slow the case down. And the court asked, "[D]o you understand that if I give you a new attorney now, I'm probably not going to give you another new attorney later?" He acknowledged both questions affirmatively, and the court granted Riklon's motion. .

In September 2023, Riklon moved to discharge his new appointed counsel. Riklon told the court that he and his counsel were "not on the same . . . page." The court pointed out that this was the same complaint he had raised about his first lawyer, and asked, "Was there anything specific you wanted to me to know about?" Riklon told the court, "No." Riklon's counsel had also filed a motion to withdraw,

and she explained that "Mr. Riklon and my understanding of the facts, and therefore, presentation of the facts at trial are significantly different. And, actually, Your Honor, would be something that would be impossible for me to present to a jury or to a court." She told the court that there was a "fundamental disagreement," and that "[c]ommunication no longer exists." The court asked, "Mr. Riklon, why aren't you talking to your lawyer?" And he replied, "No comment." The court told Riklon that he faced two choices, to represent himself or to communicate with his lawyer. Riklon replied, "I guess I got to communicate with my attorney, then."

The court denied Riklon's motion without prejudice. The court explained that part of a lawyer's job is to give their clients bad news, and "just because you don't like the information that you're getting, doesn't mean that it's wrong or bad information." The court encouraged Riklon and his counsel to work together, and told them if they couldn't work together to "come back into court and figure out what to do next."

Riklon made no further motions to discharge counsel. At the conclusion of trial, a jury convicted Riklon of unlawful possession of a firearm in the second degree. Riklon appeals.

II

Riklon argues that he was deprived of his right to counsel under the Sixth Amendment and article I, section 22 of the Washington Constitution, when the superior court denied his third motion to discharge counsel. He asserts that the court "failed to adequately inquire into the basis for [Riklon's] requests," that the "record shows a complete breakdown of communication between [Riklon] and

3

counsel," and that Riklon and his counsel had "so serious" a conflict "that their relationship collapsed." We disagree.

The decision whether to grant a defendant's motion for new court appointed counsel is within the trial court's discretion. State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). The trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds, or for untenable reasons. State v. Vermillion, 112 Wn. App. 844, 855, 51 P.3d 188 (2002)).

The Sixth Amendment guarantees the right to effective assistance of counsel, but it does not guarantee a right to particular court appointed counsel or a right to a "meaningful relationship" with appointed counsel. Morris v. Slappy, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." United States v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "[T]he Sixth Amendment is not implicated absent an effect of the challenged conduct on the reliability of the trial process." State v. McCabe, 25 Wn. App. 2d 456, 461, 523 P.3d 271, review denied, 1 Wn.3d 1014, 530 P.3d 186 (2023).

To justify substitution of counsel, the defendant must show good cause. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). Good cause includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and defendant. Id. In evaluating whether to grant a motion to substitute counsel, courts consider (1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion. State v.

4

Holmes, 31 Wn. App. 2d 269, 280, 548 P.3d 570, review denied, 3 Wn.3d 1024, 556 P.3d 1111 (2024). "[T]his court considers the extent and nature of the breakdown in the relationship and its effect on the representation actually presented. . . . If the representation is adequate, prejudice must be shown." State v. Schaller, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007) (footnotes omitted). Our purpose is to ensure that defendants receive a fair trial. Id. To warrant substitution of counsel, "[c]ounsel and defendant must be at such odds as to prevent presentation of an adequate defense." State v. Thompson, 169 Wn. App. 436, 457, 290 P.3d 996 (2012). A trial court's inquiry in response to a motion to discharge counsel is adequate when the trial court allows the defendant and counsel to express their concerns fully. Holmes, 31 Wn. App. 2d at 284. When a defendant "asserts his reasons for dissatisfaction on the record, formal inquiry is not always necessary." Id.

First, as to the extent of the conflict between Riklon and his counsel, Riklon provided vague, nonspecific reasons for his dissatisfaction, saying he did not "see eye to his eye" with his counsel. The court probed for more specific reasons, but Riklon declined to provide any. Riklon's counsel suggested that there was a difference in strategy between the two, saying she had spent time negotiating a plea agreement but Riklon was determined to go to trial. Riklon's counsel explained that she and Riklon differed in their "understanding of the facts." This difference of understanding would lead to a difference in presentation of facts at trial, but counsel hinted that ethical obligations would prohibit her from presenting Riklon's understanding of the facts. But this did not show a breakdown in

5

communications. And any ethical obligations limiting Riklon's counsel would have limited any other counsel.

Second, the superior court's inquiry was adequate. The superior court asked Riklon, "Was there anything you wanted to tell me about why you feel that way?" After receiving a vague answer, the court asked, "Was there anything specific you wanted me to know about?" Riklon replied, "No, your honor." And after Riklon's counsel explained her understanding of their conflict, the court asked, "Mr. Riklon, why aren't you talking to your lawyer?" And he replied, "No comment." The superior court gave Riklon numerous opportunities to express his concerns on the record. Despite this, Riklon never provided a specific explanation for any breakdown in the relationship.

Third, although Riklon's motion was potentially timely in relation to trial, the superior court denied the motion because it lacked a substantive basis.

Because Riklon received adequate representation, he also would need to show prejudice which he does not show. Defense counsel interviewed witnesses, filed and argued motions in limine, cross-examined a witness during the CrR 3.5 hearing, questioned jurors during voir dire, exercised peremptory challenges, argued opening and closing, cross-examined the State's witnesses, offered exhibits into evidence, and argued jury instructions. Cf. Holmes, 31 Wn. App. 2d at 283-84 (adequate defense by counsel included conducting voir dire, cross-examining during the CrR 3.5 hearing, filing motions in limine, making opening and closing statements, and questioning witnesses). After trial, Riklon's counsel argued for, and secured, a sentence at the low end of the standard range.

6

The record belies Riklon's assertion that "the record shows a complete breakdown of communication." Riklon and his counsel communicated before trial, as shown by counsel's statement that they did not agree on their understanding of the facts. At a hearing regarding trial readiness, which Riklon did not attend, his counsel told the court that she would "keep Mr. Riklon informed." During trial, Riklon's counsel consulted with him directly, referenced conversations she had had with him already, and expressed her intention to consult with him in the future. And when the superior court denied Riklon's third motion to discharge counsel without prejudice, the court told Riklon he could "come back" if he and his counsel could not figure out how to communicate. But Riklon did not file another motion to discharge counsel. The record does not show a deprivation of Riklon's Sixth Amendment right to counsel. The court did not abuse its discretion in denying the motion.

Affirmed.

_Birk, J._

WE CONCUR:

_____, ACJ _Dwyer, J._