IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34527-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUSTIN WAYNE CROSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury found Justin Wayne Croson guilty of residential burglary. On appeal, he challenges the sufficiency of the evidence. We affirm.

## FACTS

Dan Robisch noticed a sport utility vehicle (SUV) with a trailer backed up to the foreclosed and unoccupied house next to his property. Neither the vehicle nor the trailer had license plates in the front or back.

Mr. Robisch knocked on the door and heard voices, but no one answered the door. He then called 911 and reported that a burglary was likely in progress. He then drove his truck to the entrance of the shared driveway, parked it in front of the open electronic gate,

and then closed the gate. Shortly after this, he discussed the situation with a neighbor, William Long, and the two men then went to the foreclosed house. Mr. Long instructed Mr. Robisch to call 911 again. Mr. Robisch called 911 and again reported that a burglary was likely in progress.

A man exited the house and entered the SUV as if to drive it. About the same time, a woman came from around the house and entered the passenger side of the SUV. Mr. Long approached and asked the couple if he could help them. The man declined, and said they were just checking on the welfare of the house on behalf of the bank. The man then caused the SUV to accelerate quickly, and Mr. Long had to jump back to avoid the trailer hitting him. At the gated entrance to the driveway, the woman exited the SUV, entered the appropriate code, and the electronic gate opened. Mr. Long, having followed the SUV on foot, approached with his firearm drawn, and instructed the couple to exit the SUV and wait until police arrived. The man instead caused the SUV to accelerate around Mr. Robisch's parked truck and onto the roadway. As the SUV accelerated, it struck and damaged the parked truck.

Sheriff's deputies Ryan Walter and Mark Melville were in separate patrol cars responding to the call. They were advised that the SUV and trailer had left the scene. The deputies spotted the SUV and trailer and directed the driver to stop. The deputies

2

No. 34527-1-III
*State v. Croson*

directed the couple out of the SUV, handcuffed them, and put each in separate patrol cars. The deputies identified the man as Justin W. Croson, and the woman as Starla Dillard.

Deputy Walter read Mr. Croson his *Miranda*[1] warnings. Mr. Croson agreed to speak, and told the deputy that he was at the foreclosed house helping Ms. Dillard, at her employer's request, to install a stove and to work on the cabinets. He did not know the name of the employer.

Mr. Croson explained the reason he accelerated out of the driveway and hit the truck was because one of the men had drawn a gun. The deputies were unable to locate the owner of the foreclosed property, so they allowed the couple to go. But before letting them go, Deputy Melville looked into the SUV and saw various tools, including hammers, a screwdriver, bolt cutters, and a battery-powered reciprocating saw.

The deputies returned to the foreclosed house for further investigation. They found that the rear door had been removed. On entering the house, they saw that the cabinets had been taken apart, and they saw a stove on a dolly as if it was being readied for transport. They also saw a microwave with damage to the right-side screws. Much of the kitchen appeared to be damaged and in the process of being taken apart.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

After further investigation, the State charged Mr. Croson with residential burglary, first degree malicious mischief, and failure to remain at the scene of an accident—unattended vehicle.

At trial, the State called the neighbors and the deputies, all whom testified to the facts set forth above. The State also called Ryan Fuller. Mr. Fuller identified himself as the listing agent hired by the bank/property owner. He testified he became the listing agent toward the end of August 2015 or early September 2015. He took pictures of the property dated September 1, 2015. Those pictures show the kitchen in good condition. Mr. Fuller saw pictures of the kitchen's condition after September 11, 2015. He testified the condition of the kitchen had changed, it had been partially disassembled and the island removed. He also testified that when the bank's property agent wants work done to a property, it contacts him to obtain contractor bids. To his knowledge, the bank's property agent had not authorized any work to the interior of the house. He also testified it was possible the bank's property agent might have authorized some work without his knowledge, but that contractor bids and tasks typically go through him. He testified he did not give permission to Mr. Croson or Ms. Dillard to enter the house or to conduct any work on the kitchen.

4

The jury found Mr. Croson guilty of residential burglary and found him not guilty on the remaining counts. Mr. Croson timely appealed.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Mr. Croson contends that the State's evidence was insufficient to convict him of the crime of residential burglary. We disagree.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In evaluating the sufficiency of the evidence, the court must determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of insufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from that evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). This court does not reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d

5

628 (1980). For sufficiency of evidence claims, circumstantial and direct evidence carry equal weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

A person is guilty of residential burglary when he or she enters or remains unlawfully in a dwelling with the intent to commit a crime. RCW 9A.52.025. A person enters or remains unlawfully if he or she does not have a license, invitation, or privilege to enter or remain. Former RCW 9A.52.010(5) (2011). Only a person who resides in or otherwise has authority over the premises may grant a license to enter or remain. *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998).

Here, Mr. Fuller testified that the bank/owner hired him as the listing agent and if the bank's property agent wanted work to be done on the property, it would contact him to obtain contractor bids. He testified that the bank's property agent did not direct him to have any work performed in the interior of the house, and that he never hired Mr. Croson or Ms. Dillard to perform any work.

Mr. Croson's specific arguments are (1) Mr. Fuller did not have sole authority to grant permission for others to enter, (2) the State failed to exclude the possibility that someone else authorized Mr. Croson's work, and (3) the jury's finding that Mr. Croson was not guilty of malicious mischief suggests the jury did not believe that Mr. Croson caused the damage to the kitchen.

6

First, the State was not required to obtain testimony from every person with authority over the property. Instead, the State was required to prove beyond a reasonable doubt that Mr. Croson did not have permission to enter the foreclosed house. The State did this by using Mr. Croson's story to the deputy that he had permission to perform work in the kitchen. The State then obtained the testimony from the one person who most likely would know whether Mr. Croson's story was true or false, Mr. Fuller. Mr. Fuller rebutted Mr. Croson's story. This rebuttal permitted the jury to find that Mr. Croson lied to the deputy and, therefore, did not have permission to enter the foreclosed house.

Second, and similarly, the State was not required to exclude the possibility that someone else might have given Mr. Croson authority to enter the foreclosed house. The evidence supports the view that Mr. Fuller was the person who best knew if Mr. Croson had permission in September 2015 to enter the house to make repairs, and Mr. Fuller testified that Mr. Croson did not have such permission. As we said above, from Mr. Fuller's testimony alone, a rational trier of fact could have found that Mr. Croson did not have permission to enter the foreclosed house. Mr. Croson was permitted to argue to the jury that the State failed to exclude every possible person who could have given him permission to enter. But this argument goes to the weight, not the sufficiency of the evidence.

Third, and as noted by the State in its response, the jury might have found Mr. Croson not guilty of first degree malicious mischief because the jury was unable to find that the property damage exceeded $5,000. RCW 9A.48.070(1)(a). Nevertheless, there was substantial evidence that Mr. Croson was responsible for the damage to the kitchen. He had an unlicensed SUV and trailer parked adjacent to the foreclosed house, he was in the house, he falsely claimed he was repairing the kitchen, one of the deputies noticed tools in the SUV that could have been used to disassemble the kitchen, and someone between September 1, 2015 and September 11, 2015 had partly disassembled the kitchen. A rational trier of fact could find beyond a reasonable doubt that Mr. Croson was caught in the act of disassembling the kitchen.

B.    APPELLATE COSTS

Mr. Croson asks this court to decline to impose appellate costs. The State takes no position. An appellate court has discretion to require a convicted defendant to pay appellate costs to the State. *See* RCW 10.73.160(1); RAP 14.2. Generally, "the party that substantially prevails on review" will be awarded appellate costs, unless the court directs otherwise in its decision terminating review. RAP 14.2. An appellate court's authority to award costs is "permissive," and a court may, pursuant to RAP 14.2, decline to award costs at all. *See State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000). The State has

8

prevailed and is entitled to appellate costs unless we exercise our discretion to rule otherwise.

On June 10, 2016, this court issued a "General Order" regarding defendants' requests to deny cost awards when the State substantially prevails on appeal. It directs defendants to make their request in their opening brief or by motion, and to support their request by citations to authority and to the record. If the defendant claims an inability to pay appellate costs, the General Order also requires that the defendant include in the appeal record a sufficient factual record to support the claim.

Here, Mr. Croson's request does not appear in a brief. Instead, it appears as a motion in a document entitled "Report as to Continued Indigency." We deem this request a sufficient motion.

The report indicates substantial outstanding debt, no assets, and very little income. A majority of this panel grants Mr. Croson's request, and declines to award the State costs on appeal.

9

No. 34527-1-III
*State v. Croson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.                    Siddoway, J.